JOSHUA J. JONES
California Bar No. 259538
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone: (619) 234-8467
Joshua_Jones@fd.org

Attorneys for Mr. Daniel Chovan

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 10CR1805-JAH |
| Plaintiff, | DATE: June 21, 2010 |
| | TIME: 10:30 a.m. |
| v. | |
| **DANIEL EDWARD CHOVAN**, | SUPPLEMENTAL REPLY TO GOVERNMENT"S RESPONSE TO MOTIONS TO DISMISS |
| Defendant. | |

**I.      *McDonald V. Chicago* Does Not Signficant Alter the Legal Landscape with Regard to Mr. Chovan's Motions to Dismiss**

In *McDonald v. Chicago*, the Supreme Court held that the Second Amendment Right to bear arms was applicable to the States by operation of the Fourteenth Amendment. 2010 WL 2555188 (2010). The majority of the opinion is concerned with the Court's method of selective incorporation. However, the Court reaffirms the language in *Heller* that both parties rely upon in the present case. On the one hand, *McDonald* makes clear that the right to bear arms is a fundamental right. As the Court noted, the "Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *Id.* at *20. The Court rejected attempts to "treat the right recognized in *Heller* as a second-class right." *Id.* at *22. On the other hand, McDonald also reaffirmed the


language in *Heller* on which the Government purports to rely. The Court stated "[w]e made clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill."

## II. Mr. Chovan's Declaration Brings His Case Squarely Within the Holding of *District of Columbia v. Heller*

In response to Mr. Chovan's Declaration which establishes the purpose for which the firearms at issue here were kept, the Government attempts to focus on the specific facts of Heller to argue that "it makes no difference why the defendant possessed the firearms." This seems unlikely since the *Heller* majority refers to the right of self-defense more than twenty times throughout the opinion. The fact that Mr. Chovan kept these firearms in the home and that they are the kind of firearm typically kept for such purposes in rural areas is extremely relevant. The Supreme Court took great effort to make clear that the right to bear arms was tied to the right of self-defense and that such rights are particularly important in the home. *Heller*, 128 S. Ct. at 2821-2822 ("we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense").

The Government points to the fact that the petitioner in *Heller* was a police officer with no criminal history. The inclusion of the fact that the petitioner in *Heller* was a special police officer is completely gratuitous. That fact had no role in the holding of *Heller.* Surely, the government is not arguing that only police officers have a second amendment right to bear arms. So, we are left with only one relevant factual difference: Mr. Chovan has a single, fourteen-year-old misdemeanor domestic violence conviction and the petitioner in Heller did not.

Mr. Chovan's declaration was submitted simply to clarify that, just as in Heller, this case concerns the keeping of firearms in the home for the purpose of self defense. This fact narrows the issue before the Court. Since this case cannot be distinguished by the reason why the firearm was kept or the place where the firearm was kept, the only issue is whether Mr. Chovan's misdemeanor conviction can forever bar him from possessing firearms. To answer that question, the Court must subject the statute to an appropriate level of scrutiny. While *McDonald* reaffirmed the language in *Heller* finding prohibitions for felons to be "presumptively lawful," it did not go any further in explaining how the Court reached that conclusion. The

dissent in McDonald recognized that the exceptions created in Heller are not derived from any sort of interest balancing. They are simply a set of very clear and limited rules. Since this case does not fall into any of those rules, we must fall back into a typical analysis of the Constitutionality of the statute.

> the Court has haphazardly created a few simple rules, such as that it will not touch 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings,' or laws imposing conditions and qualifications on the commercial sale of arms.' But why these rules and not others? Does the COurt know that these regulations are justified by some special gun-related risk of death? In fact, the COurt does not know. It has simply invented rules that sound sensible without being able to explain why or how Chicago's handgun ban is different.

*McDonald*, 2010 WL 2555188 at *98 (Breyer, Ginsberg, and Sotomayor, JJ., dissenting).

The Government goes on to argue that § 922(g)(9) is akin to prohibitions on the possession of firearms by felons. However, the Government attempt to expand upon the language in Heller is misplaced. As the dissent in *McDonald* pointed out, there is no reasoning behind the "presumptively lawful" language in *Heller*. Given the lack of an explanation as to why prohibitions on felons are presumptively lawful, it is impossible to argue that the presumption of lawfulness should be expanded to include misdemeanors. The only explanation offered is that such prohibitions are "longstanding." However, the law at issue here, prohibiting those convicted of misdemeanor crimes of domestic violence from possessing firearms is of recent vintage. The law was passed 1996. The government argues that such a prohibition is longstanding. Interestingly, the Chicago handgun ban that the Supreme Court recently invalidates as violative of the Second and Fourteenth Amendments was passed in the mid 1980s. McDonald, 2010 WL 2555188 at *6. Accordingly, it is more "longstanding" than the law at issue in this case.

The Government cites to a number of restrictions on other rights that have affected those convicted of misdemeanors. First, they point to requirements of good moral character for sitting on a jury. This analogy simply does not work. There is no explicit constitutional right to sit on a jury; there is only the right not to be excluded form a jury for an impermissible reason. See Georgia v. McCullom, 505 U.S. 42, 48-49 (1992). Accordingly, the fact that in some jurisdictions a person may have been excluded from a jury based upon a misdemeanor conviction has no bearing on whether the government may permanently eliminate the substantive right created by the Second Amendment based upon a misdemeanor conviction.

Next the government points to the right to vote as an appropriate analogy. This analogy is inapposite

for two reasons. First, infringements on the right to vote are subject to constitutional scrutiny--exactly what the Government is trying to avoid in this case.

> a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Calabrezze*, 460 U.S. 780, 789 (1983). Second, the Constitutional right to vote as established in the Fourteenth Amendment contains an explicit exception for those convicted of crimes. U.S. Const. Amend. XIV (when the right to vote . . . is denied to any of the male inhabitants of such a state . . . except for participation in rebellion, or other crime. . .).

Finally, the government cites *Tennessee v. Garner*, for the proposition that there is no significant difference between felonies and misdemeanors. 471 U.S. 1 (1985). The Court made the comments the Government attempts to use in the context of the Fourth Amendment. Specifically, they made the decision when reaching the wise holding that it is not okay to shoot any person suspected of a felony who attempts to flee. *Id.* at 5. The Court's point was that there are some felonies that would not warrant some harsh treatment. This language does not get the Government where it wants to go. If the Supreme Court wanted to say that any person convicted of a crime may have his Second Amendment rights stripped, it easily could have said so. The Supreme court has now twice had the opportunity to explain its felon exception, and each time it has chosen to refer to felons, not convicted criminals, not violent criminals, but felons. We should take them at their word.

With all of these analogies it might be easy to lose sight of the issue before the Court. The government states "there is no evidence to support the contention that only felons have a longstanding history of being disarmed." To be clear, it is Mr. chovan's position that *neither* felons nor misdemeanants have a longstanding history of being disarmed. As a slew of commentators have explained since *Heller* was decided, there is no "longstanding" prohibition against felons owning firearms. *See* C. Kevin Marshall, *Why Can't Martha Stuart Have a Gun?*, 32 HARVD. J. L. & PUB. POL'Y 695 (2009); Carlton F.W. Larson, *Four Exceptions in Search of a Theory:* District of Columbia v. Heller *and Judicial* Ipse Dixit, 60 HASTINGS L.

J. 1371 (2009); Nelson Lund, *The Second Amendment, Heller, and Originalist Jurisprudence*, 56 U.C.L.A. L. REV. 1343, 1356–58 (2009). However, since the 9th Circuit has ruled that the language in *Heller* is not dicta, that language would control in the case of felon dispossession laws. As has been explained previously, any contention that 922(g)(9) is a longstanding prohibition is even more tenuous than the unsupported claim about felon dispossession laws.

      The government chastises Mr. Chovan for failing to support his contention that there is no longstanding firearm prohibition for misdemeanants. However, they have the burden exactly backwards. It is extraordinarily difficult to prove a negative. If such prohibitions are truly longstanding, should not the government be able to point to a single statute or regulation passed prior to 1996? For these reasons, the Court should order supplemental briefing on the appropriate level of scrutiny and determine the Constitutionality of 922(g)(9) as a matter of first impression.

Respectfully submitted,

Dated: July 12, 2010

*s/ Joshua J. Jones*
**JOSHUA J. JONES**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Chovan
Joshua_Jones@fd.org

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**DANIEL EDWARD CHOVAN**,<br><br>　　　　Defendant. | Case No. 10CR1805-JAH<br><br>**CERTIFICATE OF SERVICE** |

　　　Counsel for Defendant certifies that the foregoing pleading, is true and accurate to the best of her information and belief, and that a copy of the foregoing has been electronically served this day upon:

　　　CAROLINE HAN, ASSISTANT UNITED STATES ATTORNEY

mailed to:　　Mr. Chovan

Dated: July 12, 2010　　　　　　　　　　*/s/ Joshua J. Jones*
　　　　　　　　　　　　　　　　　　　　JOSHUA J. JONES
　　　　　　　　　　　　　　　　　　　　Federal Defenders of San Diego, Inc.
　　　　　　　　　　　　　　　　　　　　225 Broadway, Suite 900
　　　　　　　　　　　　　　　　　　　　San Diego, CA 92101-5030
　　　　　　　　　　　　　　　　　　　　(619) 234-8467  (tel) (619) 687-2666  (fax)
　　　　　　　　　　　　　　　　　　　　 E-mail: Joshua_Jones@fd.org