UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL EDWARD CHOVAN,<br><br>Defendant. | Case No. 10cr1805 JAH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT 1 OF THE INDICTMENT [Doc. No. 17-2, 17-3, 17-4]** |

### INTRODUCTION

Defendant, Daniel Edward Chovan moved to dismiss the indictment. The motion was fully briefed by the parties. After a thorough review of the parties' submissions and oral arguments, for the reasons set forth below and in conjunction with the order issued on the record, this Court DENIES Defendant's motion to dismiss.

### BACKGROUND

On April 16, 2010, Defendant was arrested and charged with possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence. The government filed a complaint on April 19, 2010, and a federal grand jury returned a two count indictment on May 12, 2010, charging defendant with a violation of 18 U.S.C. § 922(g)(9), Prohibited Person in Possession of a Firearm, and a violation of 18 U.S.C. § 924(d), False Statement in Acquisition of a Firearm. Defendant was arraigned on the indictment on May 13, 2010 and entered a not guilty plea. The instant motion was filed on June 8, 2010. The government filed its response to the motion on June 14, 2010.

1  Defendant filed a declaration in support of his motion to dismiss on June 21, 2010. Both parties appeared before this Court on June 21, 2010 for a hearing on the motion. On June 28, 2010, the government filed a supplemental brief in opposition to Defendant's motion to dismiss, and on July 12, 2010, Defendant filed his supplemental reply. After an additional brief hearing, this Court issued its order on the record on July 19, 2010.

## DISCUSSION

Defendant moves to dismiss the indictment on the grounds that (1) Defendant's Second Amendment rights were violated; (2) Defendant's civil rights were restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii); and (3) Defendant's equal protection rights were violated by 18 U.S.C. § 922(g)(9).

### I. Violation of Second Amendment Rights

Defendant argues the indictment violated his individual fundamental right to bear arms for self defense, and any infringement of that right must pass strict scrutiny.[1] In District of Columbia v. Heller, the Supreme Court held that the Second Amendment guarantees the individual right to possess and carry weapons for the purpose of self-defense. 128 S.Ct. 2783, 2817 (2008). However, the Court also held that this Second Amendment guarantee is not an unrestricted right, stating that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 2816-17. The Court noted that the presumptively lawful regulatory measures listed were only examples and that the list was not exhaustive. Id. at 2817 n.26. Thus, the Court found that there is an individual right to possess firearms, but this right is not extended to those who are disqualified. Id. at 2822.

The Ninth Circuit considered the impact of Heller in United States v. Vongxay, 594

---

[1] Defendant contends that this Court should apply strict scrutiny because the Second Amendment sets out a fundamental right. Doc. No. 17-1 at 9. As discussed below, Defendant falls within an exemption from the Second Amendment right to bear arms because section 922(g)(9) is longstanding and a presumptively lawful regulatory measure. Thus, this Court finds it unnecessary to address Defendant's contention that a strict scrutiny analysis should apply.

F.3d 1111 (9th Cir. 2010).  In Vongxay, the defendant claimed that 18 U.S.C. § 922(g)(1) violated his Second Amendment right.  Id. at 1111.  The Ninth Circuit in Vongxay held that Heller's "presumptively lawful regulatory measures" language recognized statutes such as section 922(g)(1) as an exception to the Second Amendment right to possess firearms, and therefore the defendant was disqualified from the exercise of Second Amendment rights.  Id. at 1115.  In addition, the Ninth Circuit noted that at the time of its decision, February 9, 2010, no court examining Heller has found 18 U.S.C. § 922(g) to be constitutionally suspect.  Id. (citing United States v. Baron, 2008 WL 5102307, at *2 (E.D.Wash. Nov. 25, 2008).  The Ninth Circuit held that section 922(g)(1) did not violate a felon's Second Amendment right.  Id. at 1118.

Defendant, a misdemeanant, argues that Vongxay does not apply in this case because the defendant in Vongxay was a felon, unlike the instant case.  Doc. No. 17-1 at 8.  Defendant also argues that the restriction in section 922(g)(1) enacted in 1968, is not longstanding thus section 922(g)(9), enacted in 1996, is arguably not longstanding.  Id.[2]

The government, in opposition, argues that section 922(g)(9) is longstanding pursuant to the rationale in Heller.  Doc. No. 18 at 11.  The government further argues that section 922(g)(9) is a presumptively lawful regulatory measure because Congress passed section 922(g)(9) as an extension of section 922(g)(1) to "close this dangerous loophole and keep guns from violent individuals who threaten their own families."  Id. (quoting 142 Cong. Rec. 22986 (1996) (statement of Sen. Lautenberg)).

The government also relies on the longstanding history of the right of the government to regulate gun possession to justify the prohibition of possession of a firearm by a domestic violence misdemeanant.  Id. at 12.  The government maintains the Supreme

---

[2] In addition, Defendant argues that the presumptively lawful regulatory measures language is dicta thus, it cannot control in this case.  Doc. No. 17-1 at 8.  This Court will not address this issue as the Supreme Court and the Ninth Circuit have disposed of it.  See, McDonald v. Chicago, --- S.Ct. ---, 2010 WL 25551888 (June 28, 2010), clarifying that the holding in Heller does not "cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'"  Id. at *25); Vongxay, 544 F.3d at 1116 (the presumptively lawful regulatory measures language was not dicta because "[c]ourts often limit the scope of their holdings, and such limitations are integral to those holdings").

Court found the legislative history supporting the enactment of section 922(g)(9) persuasive in United States v. Hayes, 129 S.Ct. 1079 (2009).[3]  The Hayes Court found that Congress enacted section 922(g)(9) because "existing felon-in-possession laws . . . were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in serious espousal or child abuse ultimately are not charged with or convicted of felonies.'"  Id. at 1087 (quoting 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg)).  The Court reasoned that Congress' concern was well placed in that section 921(a)(33)(A) clearly states, "the use or attempted use of physical force, or the threatened use of a deadly weapon," is an element of a misdemeanor crime of domestic violence.  Id. at 1084.  Therefore, the Hayes Court recognized that Congress extended "the federal firearm prohibition to persons convicted of 'misdemeanor crime[s] of domestic violence, . . . 'to close this dangerous loophole.'"  Id. at 1087 (quoting 142 Cong. Rec. at 22986 (1996) (statement of Sen. Lautenberg)).

Recently, the Seventh Circuit in United States v. Skoien, --- F.3d ---, 2010 WL 2735747 (7th Cir. 2010) addressed whether a misdemeanor like the one in this case is a presumptively lawful regulatory measure and whether its enactment is an extension of the longstanding prohibition on the possession of firearms.  In its analysis, the Seventh Circuit initially points to the Federal Firearms Act, enacted in 1938, which was the first federal statute disqualifying felons and misdemeanants convicted of violent offenses from possessing firearms.  Id. at *2.  The Seventh Circuit in reference to section 922(g)(1), states:

> If such a recent extension of the disqualification to non-violent felons (embezzlers and tax evaders, for example) is presumptively constitutional, as Heller said in note 26, it is difficult to condemn section 922(g)(9), which like the 1938 Act is limited to violent

---

[3] The defendant in Hayes was convicted of a misdemeanor of domestic violence.  129 S.Ct. at 1083.  The police after responding to a 911 call reporting domestic violence found a gun in the house and defendant was subsequently charged under section 922(g)(9) for unlawful possession of a firearm.  Id.  The defendant argued that his domestic violence conviction did not qualify as a predicate offense for section 922(g)(9) because West Virginia's law was a "generic battery proscription not a law designating a domestic relationship between offender and victim as an element of the offense."  Id.  The Supreme Court in Hayes held that for the predicate offense there need not be a domestic relationship in order to preserve Congress' intent.  Id. at 1089.

>crimes. It would be weird to say that section 922(g)(9) is unconstitutional in 2010 but will become constitutional in 2043, when it will be as 'longstanding' as section 922(g)(1) was when the Court decided Heller.

Id.  The court observed that "many aggressors end up with no conviction, or a misdemeanor conviction, when similar violence against a stranger would produce a felony conviction." Id. at *5.  The court also emphasized that there is a continuing threat of danger because the recidivism rates are high for domestic violence aggressors. Id. at *6. Thus, the Seventh Circuit held that section 922(g)(9) is a longstanding prohibition and a presumptively lawful regulatory measure. Id. at *3.  This Court finds the Seventh Circuit's reasoning persuasive.  Section 922(g)(9) is a presumptively lawful prohibition and represents an exemption from the right to bear arms under the Second Amendment as articulated in Heller.

In the instant case, sometime after Defendant suffered a misdemeanor conviction for domestic violence, law enforcement officers found firearms in Defendant's home upon responding to a call of a domestic abuse incident on March 29, 2010.  Doc. No. 18 at 2. At that time, Defendant's wife told the officers that Defendant struck her with a cell phone and that she feared leaving the Defendant because "he had previously threatened to hunt her down and shoot her if she ever left him." Id.  Despite the results of the investigation, Defendant states that his primary purpose for possessing the guns is self-defense.  Doc. No. 20-1 at 1.  Defendant declares that he lives in a rural area that is not routinely patrolled by the police; there have been several break-ins in the area in the past few years; and there is a lot of wildlife in the area, including coyotes, mountain lions, and rattlesnakes. Id.  However, the government provides several videos depicting the Defendant firing guns as well as acting as a firearms instructor to an unidentified female posted on http://www.YouTube.com, along with the investigative reports in this case, to refute Defendant's alleged purpose for possession.

In light of the record in this case, Defendant's arguments and position regarding the purpose for which he possessed the firearms are not persuasive.  Congress' intent in passing section 922(g)(9) was to protect citizens from individuals like Defendant.

Accordingly, Defendant's motion to dismiss is **DENIED**.

II. **Restored Civil Rights**

Defendant argues the indictment should be dismissed because his civil rights were restored pursuant to operation of California law. Defendant contends he retained his right to vote, right to serve on a jury, and the right to hold public office when convicted of domestic violence in California. Doc. No. 17-1 at 10. Defendant further contends that, even though his right to possess firearms had been taken away ten years ago, the right was restored before his arrest in this case. Id. at 11. Defendant argues that he is not subject to prosecution under section 922(g)(9) because his civil rights have been restored under section 921(a)(33)(B)(ii). Id.

The government, relying on Logan v. United States, 552 U.S. 23 (2007) and United States v. Valerio, 441 F.3d 837 (9th Cir. 2006), argues that the restoration of the right to possess firearms is not sufficient to satisfy the test for the restoration of civil rights under section 921(a)(33)(B)(ii). Doc. No. 18 at 16 (quoting Logan, 552 U.S. at 28 (right to possess firearms was not considered a civil right); Valerio, 441 F.3d at 843). The government also argues that Defendant has not had his civil rights restored because the retention of rights is not equal to a restoration of rights pursuant to Logan. Id. Therefore, the government contends, Defendant is not within the reach of section 921(a)(33)(B)(ii) and thus, is subject to prosecution under section 922(g)(9). Doc. No. 18 at 16.

Under section 921(a)(33)(B)(ii) a person will not be considered to have been convicted of a misdemeanor of domestic violence if such conviction "has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(33)(B)(ii).

The Court in Logan instructs that to determine whether a defendant's civil rights have been restored when a defendant's conviction falls within the presumptively lawful regulatory measure exception to Second Amendment protection, the court should consider three civil rights: the right to vote, the right to sit on a jury, and the right to hold public office. Logan, 552 U.S. at 28; Valerio, 441 F.3d at 843.

1    In Valerio, the defendant appealed his felon in possession conviction, claiming he was never convicted under New Mexico law as a result of the deferred imposition of his sentence and its subsequent discharge under state law. Valerio, 441 F.3d at 839. The defendant in Valerio argued that the restoration of his right to vote and the right to possess firearms invalidated his state conviction. Id. at 841-42. In support of his argument, the defendant relied upon the opinion of the New Mexico Attorney General which stated that "persons in Valerio's situation were entitled to possess firearms under the federal statute." Id. at 842. Notwithstanding, the Ninth Circuit held that the defendant's civil rights had not been restored. Id. The court noted that "[c]ircuit law establishes that the restoration of civil rights must be more than de minimis and 'must be substantial but need not be complete.'" Id. (quoting United States v. Herron, 45 F.3d 340, 342 (9th Cir. 1995)). The Ninth Circuit found that the restoration of the right to vote is insufficient to amount to a restoration of civil rights and that the New Mexico Attorney General's analysis was incorrect because it "treats restoration of the right to vote as sufficient for the federal statutory phrase, 'has had civil rights restored,' but the federal cases do not." Id.

The Ninth Circuit also held that the restoration of Valerio's right to possess firearms was not sufficient because the three civil rights that are considered in the restoration of civil rights analysis does not include the right to possess firearms. Id. at 843. Furthermore, the court pointed to the fact that "Congress meant to keep guns away from all offenders who, the Federal Government feared, might cause harm, even if those persons were not deemed dangerous by the state" because this right is directly related to a felon's future dangerousness. Id. at 842-43.

The defendant in Logan, was convicted of being a felon in possession of a firearm, and received an enhanced sentence under the Armed Career Criminal Act ("ACCA"). Logan, 552 U.S. at 26. The defendant argued that his civil rights had been restored because he retained his three civil rights: the right to vote, the right to sit on a jury, and the right to hold public office. Id. However, the Supreme Court held that the 18 U.S.C.

1  § 921(a)(20)[4] "exemption provision does not cover the case of an offender who retained
2  civil rights at all times." Id. The Court explained that the word "restore" follows its
3  ordinary meaning: "to give back something that had been taken away." Id. at 31. Thus,
4  Logan, who retained all his rights, had nothing restored to him. Id. The defendant in
5  Logan also argued that retained civil rights should be treated as restored civil rights,
6  otherwise "less serious offenders will be subject to ACCA's enhanced penalties while more
7  serious offenders in the same State, who have had civil rights restored, may escape
8  heightened punishment." Id. at 31. The Court dismissed this argument because: it does
9  not solve all possible anomalies; the Court cannot repair such a congressional oversight or
10 mistake, assuming that it is; and 18 U.S.C. § 921(a)(33)(B)(ii), which tracks section
11 922(g)(9), differentiates between "restored" and "retained" and "[i]t is more than
12 'conceivable' that the Legislature, albeit an earlier one, . . . meant to do the same in section
13 921(a)(20)." Id. at 36-37. This Court finds Logan and Valerio controlling.

14   Here, the Defendant only had his right to possess firearms restored which would
15 be insufficient under the restoration of civil rights analysis. See Valerio, 441 F.3d at 843.
16 The retention of his civil rights is not the same as the restoration of his civil rights. See
17 Logan, 552 U.S. at 31. Therefore, Defendant has not had his civil rights restored and
18 Defendant's motion to dismiss is **DENIED**.

19 III. **Violation of Equal Protection**

20   Defendant seeks dismissal of the indictment because it violates his right to equal
21 protection. The Equal Protection Clause of the Fourteenth Amendment prohibits the
22 government from "treating differently persons who are in all relevant respects alike."
23 Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Generally, "legislatures are presumed to have
24 acted within their constitutional power despite the fact that, in practice, their laws result
25 in some inequality." Id. (quoting McGowan v. Maryland, 366 U.S. 420, 425-26 (1961)).

26   Defendant argues that section 922(g)(9) violates the guarantee of equal protection

---

[4] 18 U.S.C. § 921(a)(20) excludes from qualification for enhanced sentencing any convictions for which the offender has his civil rights restored. Logan, 552 U.S. at 23.

because it prohibits Defendant from possessing a firearm based on his misdemeanor conviction, while at the same time allowing others, convicted of similar or more serious offenses in other states, to possess firearms. Doc. No. 17-1 at 11. To illustrate his contentions, Defendant provides a comparison of California law to other states that provide convicted felons automatic, or near-automatic restoration of the right to possess firearms. Id. at 12-13. Defendant also contends that the governor's pardon is the only possible way for Defendant to restore his Second Amendment rights in California pursuant to section 921(a)(33)(B)(ii), but this is almost never granted. Id. at 12. Defendant contends that section 921(a)(33)'s exceptions based upon pardon, expungement, or restoration of civil rights vary in their application among the various states. Id. Defendant argues this Court should apply strict scrutiny to his equal protection challenge. Id. at 11.

The government argues that in Vongxay, the Ninth Circuit addressed a similar claim regarding section 922(g)(1) and rejected the claim based on pre-Heller precedent. Doc. No. 18 at 16. The Ninth Circuit states that it is bound by pre-Heller law even if the reasoning upon which those cases was based-that there is no individual right to bear arms-was invalidated by Heller. Vongxay, 594 F.3d at 1116. The Ninth Circuit reasons that the "doctrine of *stare decisis* concerns the *holdings* of previous cases, not the rationales." Id. (quoting In re Osborne, 76 F.3d 306, 309 (9th Cir. 1996)). The Ninth Circuit held that the Supreme Court in Heller set an exception to the Second Amendment right for anyone disqualified by a presumptively lawful regulatory measure, such as felons. Id. at 1115. Thus, those disqualified by a presumptively lawful regulatory measure do not have an individual right to possess firearms under the Second Amendment and the rationale does not change from that contained in pre-Heller precedent.

The government also asserts that the Ninth Circuit holding in United States v. Hancock, 231 F.3d 557 (9th Cir. 2000) is applicable here. In Hancock, the Ninth Circuit held that "the discrepancy in treatment of which the defendant complained was the inevitable result of Congress' reference to state law" and section 922(g)(9) did not violate

equal protection because section 921(a)(33)(B)(ii) provided a means to regain one's right to possess firearms. Doc. No. 18 at 16 (quoting <u>Hancock</u>, 213 F.3d at 567). Therefore, the government argues, Defendant's argument must fail. <u>Id.</u> at 17.

This Court agrees with the United States. Defendant's equal protection argument is without merit based upon the law of this Circuit.

Accordingly, Defendant's motion to dismiss due to a violation of his equal protection rights is **DENIED**.

## **CONCLUSION AND ORDER**

Based on the foregoing, and in conjunction with the order issued on the record, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss Count 1 of the indictment [Doc. No. 17-2, 17-3, 17-4] is **DENIED.**

DATED: August 10, 2010

_____
JOHN A. HOUSTON
United States District Judge