1

1           UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4   UNITED STATES OF AMERICA,    )
                                 )
5                 PLAINTIFF,     )    CASE NO. 10CR1805-JAH
                                 )
6   VS.                          )    SAN DIEGO, CALIFORNIA
                                 )
7   DANIEL EDWARD CHOVAN,        )    MONDAY,
                                 )    JUNE 21, 2010
8                 DEFENDANT.     )    10:53 A.M.
    _____)

9

10

11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

               MOTION HEARING
13

       BEFORE THE HONORABLE JOHN A. HOUSTON
14         UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21              CAMERON P. KIRCHER
22          CSR NO. 9427, RPR, CRR, RMR
            880 FRONT STREET, ROOM 4290
23         SAN DIEGO, CALIFORNIA  92101
             PHONE:  (619) 239-4588
24         E-MAIL:  CPKIRCHER@GMAIL.COM

25

COMPUTER-AIDED TRANSCRIPTION

2

```
1    APPEARANCES:

2    FOR THE GOVERNMENT:        LAURA E. DUFFY, U.S. ATTORNEY
                                BY:  CAROLINE PINEDA HAN, ESQ.
3                               ASSISTANT U.S. ATTORNEY
                                880 FRONT STREET
4                               SAN DIEGO, CALIFORNIA  92101

5
     FOR THE DEFENDANT:         FEDERAL DEFENDERS OF SAN DIEGO
6                               ATTORNEYS AT LAW
                                BY:  JOSHUA J. JONES,, ESQ.
7                               225 BROADWAY STREET
                                SUITE 900
8                               SAN DIEGO, CALIFORNIA  92101

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

COMPUTER-AIDED TRANSCRIPTION

1          SAN DIEGO, CALIFORNIA – MONDAY, JUNE 21, 2010

2                          10:53 A.M.

3          THE CLERK:  NO. 15 IS 10CR1805, THE UNITED STATES OF

4     AMERICA VERSUS DANIEL EDWARD CHOVAN.

5          MR. JONES:  JOSHUA JONES, FEDERAL DEFENDERS, ON

6     BEHALF OF MR. CHOVAN, WHO IS PRESENT ON BOND.

7          THE COURT:  GOOD MORNING, SIR.

8          THE DEFENDANT:  GOOD MORNING, YOUR HONOR.

9          MS. HAN:  GOOD MORNING, YOUR HONOR.  CAROLINE HAN ON

10    BEHALF OF THE UNITED STATES.

11         THE COURT:  GOOD MORNING.

12         SIR, YOU CAN HAVE A SEAT, IF YOU'D LIKE.  YOU CAN

13    HAVE A SEAT.  WE'RE HERE ON YOUR MOTIONS TO DISMISS.

14         COUNSEL.

15         MR. JONES:  YES, YOUR HONOR.

16         A COUPLE PRELIMINARY ISSUES.  I'M PREPARED TO

17    PROCEED ON THE MOTIONS THAT WE HAVE.  I AM GOING TO BE

18    REQUESTING ONE FURTHER MOTIONS DATE.  I HAVE IDENTIFIED, I

19    THINK, TWO OTHER MOTIONS THAT NEED TO BE FILED IN THE MATTER.

20         ALSO, DEPENDING ON THE COURT'S RULING REGARDING OUR

21    FIRST MOTION REGARDING THE SECOND AMENDMENT, WE DO THINK IT

22    MIGHT BE APPROPRIATE TO HAVE SUPPLEMENTAL BRIEFING, SHOULD

23    THE COURT DETERMINE TO ANALYZE THE STATUTE UNDER AN

24    INTERMEDIATE OR STRICT SCRUTINY, TO GIVE THE GOVERNMENT AN

25    OPPORTUNITY TO MEET THEIR BURDEN IN THAT MATTER.

4

1          THE COURT:  ALL RIGHT.

2          MR. JONES:  WITH REGARD TO THE MOTIONS THAT ARE

3    CURRENTLY ON FILE, THE FIRST MOTION IS --

4          THE COURT:  COULD YOU BRING THE OTHER MIC IN, SIR.

5          MR. JONES:  SURE.

6          WITH REGARD TO THE MOTIONS THAT ARE CURRENTLY ON

7    FILE, THE FIRST MOTION IS THE MOTION TO DISMISS, STATING THAT

8    922(G)(9) INFRINGES UPON MR. CHOVAN'S CONSTITUTIONAL RIGHT TO

9    BEAR ARMS UNDER THE SECOND AMENDMENT.

10         THE GOVERNMENT'S RESPONSE TO THE MOTION IS TO INVOKE

11   THE LANGUAGE IN HELLER THAT'S BEEN QUOTED IN A LOT OF SIMILAR

12   CASES UNDER 922(G)(1) --

13         THE REPORTER:  I'M SORRY.  922(T)?

14         MR. JONES:  "G" AS IN "GOAT."

15         -- 922(G)(1), WHICH STATES THAT THE RULING IN HELLER

16   WAS NOT MEANT TO ESSENTIALLY OVERTURN LONG-STANDING

17   PROHIBITIONS ON FIREARMS BY FELONS OR THE MENTALLY ILL.

18   OBVIOUSLY, THIS CASE DOESN'T DEAL WITH A FELON.  IT HAS TO DO

19   WITH A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE.

20         FURTHERMORE, THE IMPORTANT WORD THAT WE'D LIKE THE

21   COURT TO FOCUS ON IN THAT LANGUAGE IS "LONG-STANDING."  THE

22   GOVERNMENT ATTEMPTS TO ARGUE THAT BECAUSE THE COURT

23   DETERMINED THE FELON IN POSSESSION OF THE STATUTE, WHICH WAS

24   PASSED IN 1968, TO BE LONG-STANDING, THAT THE MISDEMEANOR IN

25   POSSESSION -- OR MISDEMEANANT IN POSSESSION STATUTE, WHICH

1    WAS PASSED IN 1996, SHOULD ALSO BE TERMED LONG-STANDING.

2    HOWEVER, IT WOULD BE OUR POSITION THAT IF A STATUTE PASSED

3    MERELY 14 YEARS AGO IS LONG-STANDING WITH REFERENCE TO AN

4    AMENDMENT THAT WAS IN THE BILL OF RIGHTS, THEN THERE IS

5    REALLY NOTHING THAT ISN'T LONG-STANDING IN THAT CONTEXT.

6         FURTHERMORE, THE PROHIBITION ON FELONS ACTUALLY GOES

7    BACK FURTHER THAN THE PASSAGE OF THE 1968 LAW.  IT ACTUALLY

8    TRACES ITS ROOTS BACK TO, I THINK -- I BELIEVE A STATUTE THAT

9    WAS PASSED IN THE 1930'S REGARDING THE POSSESSION OF

10   FIREARMS.

11        WHILE THERE IS SOME TRACE EVIDENCE THAT AT THE TIME

12   OF THE FOUNDING, THERE WERE PROHIBITIONS ON CERTAIN

13   INDIVIDUALS HAVING FIREARMS, THERE IS NO INDICATION THAT

14   THERE HAS EVER BEEN ANY PROHIBITION ON A PERSON WHO'S ONLY

15   BEEN CONVICTED OF A MISDEMEANOR, WHICH FOR A LONG TIME WAS

16   REFERRED TO AS A PETTY OFFENSE.

17        THERE IS NO LANGUAGE IN HELLER THAT'S DIRECTLY ON

18   POINT.  THERE IS NO LANGUAGE IN ANY NINTH CIRCUIT CASE THAT'S

19   ON POINT.  THE NINTH CIRCUIT'S MOST EXHAUSTIVE ADDRESSING THE

20   ISSUE OBVIOUSLY IS IN VONGXAY, WERE THEY ARE ADDRESSING

21   922(G)(1).  BUT THE COURT IN THAT INSTANCE REFERS TO THE WORD

22   FELON EXPLICITLY ON FOUR OR FIVE OCCASIONS AND NOTES THAT IT

23   WAS THE DEFENDANT'S STATUS AS A FELON IN THAT CASE THAT

24   BROUGHT HIM UNDER THAT LANGUAGE IN HELLER.

25        AS THE SEVENTH CIRCUIT HAS NOTED, AND ONE OTHER

6

1    CIRCUIT, BECAUSE THE LANGUAGE IN HELLER DOES NOT DIRECTLY

2    CONTROL 922(G)(9), IT'S NECESSARY FOR COURTS TO ENGAGE IN THE

3    APPROPRIATE CONSTITUTIONAL ANALYSIS IN THIS MATTER.

4         NOW, IT'S OUR POSITION THAT THE APPROPRIATE ANALYSIS

5    WOULD BE THAT THE STATUTE SHOULD BE ANALYZED UNDER STRICT

6    SCRUTINY.  THE SECOND AMENDMENT IS IN THE BILL OF RIGHTS.

7    IT'S INDICATED -- THE SUPREME COURT CLEARLY INDICATED IN

8    HELLER THAT RATIONAL BASIS VIEW HAS NO PLACE HERE BECAUSE

9    WE'RE TALKING ABOUT AN ENUMERATED RIGHT.

10        THE COURT:  DIDN'T HELLER CARVE OUT CERTAIN

11   EXCEPTIONS, REGULATORY EXCEPTIONS TO THE FUNDAMENTAL RIGHT TO

12   BEAR ARMS?

13        MR. JONES:  THAT'S CORRECT, YOUR HONOR.  HOWEVER,

14   IT'S UNCLEAR IN HELLER AS TO THE WAY IN WHICH THEY ARE

15   CARVING EXCEPTIONS.  THERE ARE ESSENTIALLY TWO WAYS THAT --

16   ONE WOULD BE A SCOPE ARGUMENT, WHICH WOULD SAY THAT THE

17   SECOND AMENDMENT ITSELF CARVES OUT CERTAIN TYPES OF CONDUCT

18   OR CERTAIN PEOPLE TO WHICH THE AMENDMENT DOES NOT APPLY.

19        NOW, THAT MAY BE TRUE WITH CERTAIN -- I BELIEVE THAT

20   MIGHT APPLY TO REGULATIONS REGARDING CERTAIN TYPES OF

21   FIREARMS, LIKE ASSAULT WEAPONS AND THINGS OF THAT NATURE.

22   HOWEVER, THERE IS NOTHING IN THE LANGUAGE OF THE SECOND

23   AMENDMENT THAT INDICATES THAT IT WAS INTENDED TO APPLY ONLY

24   TO SPECIFIC INDIVIDUALS.  SO WHAT WE'RE LEFT WITH THEN IS TO

25   INTERPRET WHAT THE COURT MEANT WHEN IT PROVIDED FOR THESE

7

1    EXCEPTIONS.

2         AND I THINK THE MOST NATURAL READING OF HELLER IS TO

3    DETERMINE THAT THEY ARE SAYING THAT THE REASONS BEHIND THOSE

4    LAWS IS THAT IT SPECIFICALLY NAMED, NAMELY THE FELON IN

5    POSSESSION OR PROHIBITIONS ON THE POSSESSION OF FIREARMS BY

6    THE MENTALLY ILL, PASSED WHATEVER LEVEL OF SCRUTINY THE COURT

7    IS DETERMINING SHOULD APPLY TO SECOND AMENDMENT CHALLENGES.

8         SO WHILE THE COURT DOES ACKNOWLEDGE THAT THERE ARE

9    CERTAIN CIRCUMSTANCES UNDER WHICH THE RIGHT CAN BE INFRINGED,

10   OBVIOUSLY NO RIGHT UNDER OUR CONSTITUTION IS ABSOLUTE.  THE

11   COURT DOES NOT INDICATE NECESSARILY WHETHER THEY ARE

12   DETERMINING THAT THERE ARE SOME INDIVIDUALS WHO SIMPLY DON'T

13   HAVE A SECOND AMENDMENT RIGHT SO THERE IS NO ANALYSIS

14   REQUIRED, WHICH I THINK, LOOKING OVER CONSTITUTIONAL

15   JURISPRUDENCE AS A WHOLE, WOULD BE A RARITY, ESPECIALLY

16   CONSIDERING THAT THE SECOND AMENDMENT DOES NOT PLACE ANY

17   EXPLICIT OR IMPLICIT LIMITATIONS ON THE RIGHT.  THE WORDS

18   USED ARE "THE PEOPLE."

19        BECAUSE OF THAT, I THINK THE MORE NATURAL READING OF

20   THE OPINION IN HELLER IS THAT THE COURT IS SAYING, WE BELIEVE

21   THAT SOME OF THESE LONG-STANDING PROHIBITIONS OBVIOUSLY WOULD

22   PASS THE LEVEL OF SCRUTINY THAT'S REQUIRED.  HOWEVER, BEING A

23   MISDEMEANANT IN POSSESSION OF A FIREARM IS NOT ONE OF THE

24   ENUMERATED EXCEPTIONS THAT THE COURT STATED.  SO IT IS LEFT

25   TO THE LOWER COURTS TO ANALYZE THOSE ON A CASE-BY-CASE BASIS

1    TO DETERMINE WHETHER OR NOT THE STATUTE MEETS THE LEVEL OF

2    CONSTITUTIONAL SCRUTINY.

3            OBVIOUSLY WE'RE IN THE UNFORTUNATE POSITION WHERE WE

4    DON'T KNOW EXACTLY WHAT LEVEL THAT IS, EITHER IT'S

5    INTERMEDIATE OR STRICT, BUT I THINK GIVEN THE FACT THAT IT'S

6    AN --

7            THE REPORTER:  WAIT, WAIT.

8            THE COURT:  SLOW DOWN, SIR.

9            MR. JONES:  -- ENUMERATED CONSTITUTIONAL RIGHT, I

10   BELIEVE THAT STRICT SCRUTINY WOULD BE APPROPRIATE IN THIS

11   CASE.

12           THE COURT:  THERE IS A CONTENTION BETWEEN THE

13   DEFENSE AND THE GOVERNMENT WITH RESPECT TO THAT PRECLUSION

14   LANGUAGE, THE EXEMPTION LANGUAGE IN HELLER.  THE GOVERNMENT

15   IS OF THE MIND THAT -- YOU'RE OF THE MIND THAT IT'S DICTA

16   WITH RESPECT TO OTHER REGULATORY ACTS BY A LEGISLATIVE

17   BRANCH.  THE GOVERNMENT INDICATES THAT -- THE GOVERNMENT

18   ARGUES THAT IT'S BROADER THAN THE SPECIFIC CIRCUMSTANCES OR

19   EXAMPLES LAID OUT IN HELLER, AS FAR AS THE GOVERNMENT'S

20   REGULATED AUTHORITY.

21           MR. JONES:  YES, YOUR HONOR.

22           THE COURT:  COULD YOU COMMENT ON THAT.

23           MR. JONES:  YES.

24           THE GOVERNMENT'S ARGUMENT IN THIS INSTANCE

25   ESSENTIALLY SEEMS TO BE THAT BECAUSE THE SUPREME COURT

1    INDICATED THAT THERE ARE SOME PERMISSIBLE REGULATORY

2    MEASURES, THAT ALL REGULATORY MEASURES ARE PERMISSIBLE.

3    OBVIOUSLY THAT SIMPLY CAN'T HOLD TRUE.

4            YOU KNOW, IF THERE WERE A LAW THAT SAID THAT

5    BROWN-HAIRED PEOPLE CAN'T HOLD -- CAN'T POSSESS FIREARMS,

6    THAT WOULD OBVIOUSLY BE A REGULATORY MEASURE.  BUT THE WAY

7    THAT THE SUPREME COURT HAS TRADITIONALLY ADDRESSED

8    INFRINGEMENTS UPON RIGHTS LIKE THIS IS TO ANALYZE WHAT THE

9    PURPOSE OF THE STATUTE IS, WHAT THE GOVERNMENT'S PURPOSE IN

10   PASSING IT IS AND THE EXTENT TO WHICH IT INFRINGES ON A

11   PERSON'S CONSTITUTIONAL RIGHTS.

12           I DON'T -- I THINK ARGUING OVER WHETHER OR NOT THE

13   LANGUAGE IN HELLER IS DICTA, ESPECIALLY IN THIS CASE, ISN'T

14   REALLY APPROPRIATE, BECAUSE THERE IS NO -- THERE IS NO

15   LANGUAGE THAT IS DIRECTLY ON POINT FOR MR. CHOVAN'S CASE.

16   OBVIOUSLY, EVEN SUPREME COURT DICTA WOULD BE BINDING UPON A

17   LOWER COURT.

18           HOWEVER, THE MERE FACT THAT THE COURT STATED THAT

19   REGULATORY -- THERE ARE REGULATORY MEASURES THAT ARE

20   APPROPRIATE AND CAN PASS CONSTITUTIONAL MUSTER DOES NOT MEAN

21   THAT ANY REGULATORY MEASURE THAT THE GOVERNMENT PASSES,

22   ESPECIALLY ONE THAT'S AS COMPLEX AS 922(G)(9), BECAUSE IN

23   THIS CASE WE'RE NOT JUST TALKING ABOUT A PROHIBITION ON

24   MISDEMEANANTS, PEOPLE THAT HAVE BEEN CONVICTED OF A

25   MISDEMEANOR CRIME OF DOMESTIC VIOLENCE, BUT THERE ARE ALSO

1    THE EXCEPTIONS, WHICH IS CONTAINED UNDER 922(A)(33), WHICH

2    THEN DIVERTS TO STATE LAW, GETS A LITTLE BIT INTO THE SECOND

3    MOTION BEFORE THE COURT TODAY.

4         BUT, OBVIOUSLY, IT'S NOT -- IT'S NOT A SIMPLE

5    REGULATORY MEASURE.  THERE IS LOT OF NUANCES, AND IT APPLIES

6    DIFFERENTLY IN DIFFERENT STATES TO DIFFERENT PEOPLE.  AND THE

7    SUPREME COURT OBVIOUSLY DID NOT UNDERTAKE AN EXHAUSTIVE

8    REVIEW OF ANY STATUTE FOR THAT MATTER.  IT CERTAINLY DOESN'T

9    CITE 922(G)(9).  IT SIMPLY MAKES THIS VAGUE REFERENCE.

10         AND I THINK IT WOULD BE A MISTAKE FOR LOWER COURTS

11   TO COMPLETELY FORECLOSE ANY CHALLENGE TO ANY REGULATION THAT

12   WAS CURRENTLY IN EFFECT AT THE TIME OF HELLER, GIVEN THE FACT

13   THAT HELLER REALLY DID WORK A SEA CHANGE IN THE WAY THAT WE

14   VIEW THE SECOND AMENDMENT AND PEOPLE'S CONSTITUTIONAL RIGHTS

15   TO BEAR ARMS.  SO THAT WOULD BE OUR POSITION ON THE

16   GOVERNMENT'S REGULATORY MEASURES LANGUAGE IN HELLER.

17         I ALSO WANTED TO ADDRESS THE SECOND MOTION THAT WE

18   HAD MADE REGARDING WHETHER OR NOT MR. CHOVAN HAS HAD HIS

19   CIVIL RIGHTS RESTORED WITHIN THE MEANING OF THE STATUTE.

20         THE COURT:  YES.

21         MR. JONES:  I THINK A LITTLE BIT OF BACKGROUND IS

22   USEFUL IN THIS INSTANCE, BECAUSE ORIGINALLY THE SUPREME COURT

23   IN DICKERSON HAD ADDRESSED THIS ISSUE AND HAD DETERMINED THAT

24   FEDERAL LAW WOULD CONTROL WHETHER OR NOT A PERSON'S CIVIL

25   RIGHTS HAD BEEN RESTORED AND HOW THAT EXCEPTION WOULD APPLY.

1    THEN CONGRESS RESPONDED AND SAID -- MADE CLEAR THAT IT WANTED

2    TO DEFER TO THE STATES TO DETERMINE WHETHER OR NOT A PERSON'S

3    CIVIL RIGHTS HAD BEEN RESTORED AND WHETHER OR NOT THEIR RIGHT

4    TO BEAR ARMS HAD CONSEQUENTLY BEEN RETURNED TO THEM.

5         BECAUSE OF CONGRESS' DECISION IN THAT MATTER TO

6    DEFER TO THE STATES, IT'S CREATED SOME DISPARITIES BETWEEN

7    HOW DIFFERENT PEOPLE ARE TREATED DEPENDING ON WHAT STATE

8    THEIR CONVICTION IS IN AND WHAT METHOD THAT STATE USES TO

9    RESTORE A PERSON'S CIVIL RIGHTS.

10        IN THIS CASE, MR. CHOVAN OBVIOUSLY WAS CONVICTED OF

11   A MISDEMEANOR ABOUT 14 YEARS AGO.  AT THE TIME OF THAT

12   CONVICTION, HE LOST HIS RIGHT TO BEAR ARMS UNDER CALIFORNIA

13   LAW FOR TEN YEARS.  THAT TEN YEARS HAS EXPIRED.  UPON THE

14   EXPIRATION OF THOSE TEN YEARS, MR. CHOVAN REGAINED HIS RIGHT

15   TO BEAR ARMS UNDER CALIFORNIA.

16        AND THE GOVERNMENT REFERRED TO A CASE -- THE MOST

17   RECENT SUPREME COURT CASE ON THE ISSUE -- OF LOGAN.  AND

18   THERE IS SOME LANGUAGE IN LOGAN THAT I SPECIFICALLY WANTED TO

19   DIRECT THE COURT TO.  SPECIFICALLY WHEN THEY STATED THE

20   HOLDING IN LOGAN, THEY STATED, WE HOLD THAT THE SECTION

21   921(A)(20) EXCEPTION PROVISION DOES NOT COVER THE CASE OF AN

22   OFFENDER WHO RETAINS CIVIL RIGHTS AT ALL TIMES AND WHOSE

23   LEGAL STATUS POST-CONVICTION REMAINED IN ALL RESPECTS

24   UNALTERED BY ANY STATE DISPENSATION.  THAT'S JUST NOT THE

25   CASE FOR MR. CHOVAN.  HIS STATUS, HIS LEGAL STATUS WAS

1    ALTERED.  HIS RIGHT TO BEAR ARMS WAS TAKEN AWAY AND THEN

2    RETURNED BY THE STATE.

3         AND FURTHER IN LOGAN, LATER ON THEY INDICATED THAT

4    ONE OF THE MAIN PURPOSES THAT CONGRESS HAD IN PASSING THIS

5    EXEMPTION, IT STATES THAT CONGRESS ALSO SOUGHT TO DEFER TO A

6    STATE'S DISPENSATION RELIEVING AN OFFENDER FROM DISABLING

7    EFFECTS OF A CONVICTION.

8         SO IF ONE OF THE MAIN PURPOSES OF CONGRESS IS TO

9    DEFER TO THE STATE REGARDING WHETHER OR NOT A PERSON'S RIGHTS

10   ARE DISABLED, THE STATE IN THIS CASE, CALIFORNIA HAS SAID,

11   WELL, AFTER TEN YEARS, IF YOU DON'T HAVE ANY OTHER

12   CONVICTIONS, IF YOU DON'T HAVE ANY OTHER PROBLEMS, YOU CAN

13   BEAR ARMS.

14        ANOTHER THING THAT I THINK THE COURT NEEDS TO KEEP

15   IN MIND WHEN DETERMINING THAT SECOND MOTION IS THE FACT THAT

16   LOGAN AND MOST OF THE CASES ADDRESSING WHETHER A PERSON'S

17   CIVIL RIGHTS HAVE BEEN RESTORED, WERE ALL DECIDED PRE-HELLER,

18   BEFORE THE SUPREME COURT INDICATED THAT THE RIGHT TO BEAR

19   ARMS WAS AN INDIVIDUAL RIGHT, AND THAT ALL OF THOSE CASES

20   THAT DETERMINE THAT THE CIVIL RIGHTS THAT THEY LOOK TO ARE

21   THE RIGHT TO VOTE, THE RIGHT TO SERVE ON A JURY, THE RIGHT TO

22   HOLD PUBLIC OFFICE.

23        WHEN THE COURT WAS SAYING THAT, THEY WERE NOT

24   THINKING OR WERE NOT AWARE OF THE FACT THAT THE SECOND

25   AMENDMENT WAS AN INDIVIDUAL RIGHT, AND AS THE NINTH CIRCUIT

1    HAS PREVIOUSLY HELD, IT'S OBVIOUSLY THE MOST PROBATIVE RIGHT

2    AS TO DETERMINE WHETHER OR NOT THE STATE BELIEVES THAT A

3    PERSON IS STILL DANGEROUS AND SHOULD HAVE THEIR RIGHT TO

4    POSSESS FIREARMS REVOKED.

5            SO MR. CHOVAN FINDS HIMSELF IN A VERY UNIQUE AND

6    DIFFICULT SITUATION IN THE SENSE THAT HE WAS ACTUALLY

7    CONVICTED OF HIS MISDEMEANOR CRIME OF DOMESTIC VIOLENCE

8    BEFORE THE -- BEFORE CONGRESS MADE IT ILLEGAL FOR

9    MISDEMEANANTS TO POSSESS FIREARMS.  HE WAS TOLD THAT HE WAS

10   UNABLE TO POSSESS A FIREARM FOR TEN YEARS.  THEN AFTER THE

11   TEN YEARS HAD EXPIRED, HE'S CHARGED FEDERALLY FOR BEING A

12   MISDEMEANANT IN THE POSSESSION OF A FIREARM.

13           THAT KIND OF LEADS INTO THE ONE FURTHER MOTION THAT

14   I WANTED TO FILE, WOULD BE THAT THE STATUTE EITHER VIOLATES

15   DUE PROCESS EITHER FOR FAILURE OF NOTICE OR BECAUSE IT'S VOID

16   FOR VAGUENESS, BECAUSE THERE IS NO WAY FOR A PERSON LIKE

17   MR. CHOVAN TO TRULY DISCERN WHETHER OR NOT HE'S GOING TO BE

18   ELIGIBLE TO POSSESS A FIREARM.  IF HE LOOKS AT THE STATUTE,

19   AS THE SUPREME COURT HAS MADE CLEAR, THEY ARE DEFERRING TO

20   THE STATES, THEY ARE LOOKING TO THE STATES TO DETERMINE

21   WHETHER OR NOT A PERSON HAS THE RIGHT TO BEAR ARMS.  AND THE

22   STATE IS TELLING HIM, WELL, AFTER TEN YEARS, YOU'RE GOOD TO

23   GO.

24           SO I THINK THE EASIEST AND MOST SIMPLE WAY TO LOOK

25   AT THIS CASE IS, THE STATUTE SAYS WHETHER OR NOT -- IF HIS

14

1    CIVIL RIGHTS HAVE BEEN RESTORED, HE HASN'T BEEN CONVICTED

2    WITHIN THE MEANING OF THE STATUTE.  MR. CHOVAN AFTER HIS

3    CONVICTION HAD HIS RIGHT TO BEAR ARMS SUSPENDED FOR TEN

4    YEARS.  THAT TEN YEARS EXPIRED.  THERE IS NO EVIDENCE THAT HE

5    POSSESSED A FIREARM WITHIN THAT TIME FRAME, AND, THUS, HIS

6    CIVIL RIGHTS WERE RESTORED AT THE EXPIRATION OF THE TEN YEARS

7    AND HE'S NO LONGER ELIGIBLE FOR PROSECUTION UNDER 922 FOR

8    THAT CONVICTION.

9         THE LAST MOTION THAT'S BEFORE THE COURT TODAY HAS TO

10   DO WITH THE EQUAL PROTECTION ARGUMENT.  IT'S SIMILAR IN

11   NATURE TO THE SECOND AMENDMENT ARGUMENT, BUT WHAT IT FOCUSES

12   ON IS THE FACT THAT MR. CHOVAN IS TREATED DRASTICALLY

13   DIFFERENTLY FROM OTHER INDIVIDUALS IN OTHER STATES WHO HAVE

14   SUFFERED SIMILAR CONVICTIONS.

15        IN SOME STATES PEOPLE WHO ARE CONVICTED OF

16   MISDEMEANOR CRIMES OF DOMESTIC VIOLENCE, THEY LOSE THEIR

17   CIVIL RIGHTS, BUT ONLY FOR THE TERM OF INCARCERATION.  SO IF

18   A PERSON WAS CONVICTED OF A MISDEMEANOR CRIME OF DOMESTIC

19   VIOLENCE, SERVED 60 DAYS, AND AFTER THAT 60 DAYS, THEY

20   RECEIVE THEIR CIVIL RIGHTS BACK, THEY CAN'T BE PROSECUTED.

21        YET, MR. CHOVAN, BECAUSE CALIFORNIA DID NOT TAKE

22   AWAY HIS RIGHT TO VOTE, HIS RIGHT TO HOLD PUBLIC OFFICE OR

23   HIS RIGHT TO SERVE ON A JURY, BUT DID TAKE AWAY HIS RIGHT TO

24   BEAR ARMS -- AND HE ABIDED BY THAT RESTRICTION -- IS TREATED

25   DRASTICALLY DIFFERENTLY.  HE'S ALLOWED TO BE PROSECUTED WHILE

1    THESE OTHER PEOPLE ARE ABLE TO REMAIN FREE FROM PROSECUTION.

2    AND, PERHAPS, AND AN EVEN MORE EGREGIOUS DISPARITY EXISTS FOR

3    FELONS.  IN MANY STATES, FELONS ARE ABLE, EVEN FELONS WHO

4    HAVE BEEN CONVICTED OF SERIOUS CRIMES ARE ABLE TO REGAIN

5    THEIR CIVIL RIGHTS.

6         BASED ON THE GOVERNMENT'S ARGUMENT IN THIS CASE, A

7    PERSON LIKE MR. CHOVAN WHO'S ONLY EVER BEEN CONVICTED OF A

8    MISDEMEANOR 14 YEARS AGO IS FOREVER BARRED FROM OWNING A

9    FIREARM; WHEREAS, A FELON IN ANOTHER DISTRICT -- OR ANOTHER

10   STATE MIGHT BE ABLE TO REGAIN HIS RIGHT TO BEAR ARMS.  IN

11   FACT, IN SOME STATES, HE WOULD AUTOMATICALLY REGAIN IT AFTER

12   THE EXPIRATION OF A CERTAIN PERIOD OF TIME.

13        NOW, COURTS HAVE ADDRESSED THIS DISPARITY IN THE

14   PAST AND REJECTED IT UNDER RATIONAL BASIS REVIEW.  HOWEVER,

15   ALL OF THOSE CASES WERE DECIDED PRE-HELLER.  THEY WERE

16   DECIDED BEFORE THE RIGHT TO BEAR ARMS WAS DECIDED TO BE A

17   CONSTITUTIONAL INDIVIDUAL RIGHT.  ACCORDINGLY, THE RESULT IS

18   DIFFERENT.

19        MANY COURTS HAVE RECOGNIZED THE ANOMALIES THAT ARE

20   CREATED BY DEFERRING TO THE STATES TO DETERMINE WHETHER OR

21   NOT A PERSON'S CIVIL RIGHTS HAVE BEEN RESTORED.  HOWEVER,

22   THEY INDICATED, WELL, THERE IS AT LEAST SOME RATIONAL BASIS

23   HERE THAT CONGRESS WANTED TO DEFER TO THE STATE TO SEE IF THE

24   STATE THINKS THAT THE PERSON HAS REGAINED A SENSE OF

25   RESPONSIBILITY, SUCH THAT THEY SHOULD POSSESS FIREARMS.

1        MR. CHOVAN'S CASE IN TWO RESPECTS PROVIDES A VERY

2   DIFFERENT CASE.  ONE, THE STATE HAS INDICATED THAT THEY

3   BELIEVE HE'S NO LONGER DANGEROUS IN THE SENSE THAT THEY WOULD

4   ALLOW HIM TO POSSESS FIREARMS.  THE DISPARATE IMPACT IN THIS

5   CASE IS OBVIOUS -- IT'S OBVIOUSLY VIEWED THROUGH A DIFFERENT

6   LENS NOW THAT HIS RIGHT TO BEAR ARMS IS A FUNDAMENTAL

7   CONSTITUTIONAL RIGHT UNDER THE SECOND AMENDMENT.

8        AND WHETHER WE WERE TO VIEW IT UNDER INTERMEDIATE

9   SCRUTINY OR STRICT SCRUTINY, THE FACT OF THE MATTER IS WE

10  HAVE DRASTICALLY DIFFERENT RESULTS FOR PEOPLE THAT ARE, YOU

11  KNOW, NOT ONLY SIMILARLY SITUATED, BUT MR. CHOVAN IS TREATED

12  MORE HARSHLY THAN SOMEBODY WHO IS IN A MUCH WORSE OR HAS

13  COMMITTED A MUCH MORE SERIOUS CRIME.  SO I DON'T SEE HOW THAT

14  COULD POSSIBLY MEET THE STANDARDS OF EVEN AN INTERMEDIATE

15  SCRUTINY, SHOULD THE COURT CHOOSE TO APPLY THAT.

16       THE LAST POINT THAT WE JUST WANT TO MAKE TO THE

17  COURT WAS TO EMPHASIZE THE CHRONOLOGY OF EVENTS IN THIS CASE,

18  IS THAT IT'S BEEN 14 YEARS SINCE MR. CHOVAN'S 1996

19  MISDEMEANOR CONVICTION.  THERE IS NO ALLEGATION THAT HE

20  POSSESSED A FIREARM PRIOR TO 2006 WHEN HIS STATE FEDERAL BAN

21  HAD EXPIRED.  DESPITE THAT FACT, HE IS BEING TREATED

22  DIFFERENTLY, MORE HARSHLY THAN INDIVIDUALS IN OTHER STATES,

23  WHO HAVE BEEN CONVICTED OF SERIOUS FELONIES.  I THINK THAT'S

24  A VERY CLEAR AND OBVIOUS EXAMPLE OF AN EQUAL PROTECTION

25  VIOLATION, ESPECIALLY WHEN THE COURT TAKES INTO ACCOUNT THE

1    NATURE OF THE RIGHT INVOLVED IN THIS CASE.

2              THE COURT:  ALL RIGHT.  THANK YOU, SIR.

3         I'D LIKE TO HEAR FROM THE GOVERNMENT.

4         MS. HAN:  YOUR HONOR, WE RESPONDED TO MANY OF THESE

5    SAME ARGUMENTS IN OUR PAPERS, SO I'M GOING TO JUST RESPOND

6    BRIEFLY.

7              YOUR HONOR, IT IS INDEED OUR POSITION THAT 922(G)(9)

8    IS A PRESUMPTIVELY LAWFUL MEASURE THAT HELLER SPECIFICALLY

9    CARVED OUT.  AND, IN FACT, THE NINTH CIRCUIT ITSELF AGREES

10   THAT THAT LANGUAGE IS NOT DICTA, NOT IN RELATION TO

11   922(G)(9), BUT IN RELATION TO 922(G)(1), AS THEY FOUND

12   RECENTLY IN VONGXAY.  AND FOR THE RECORD, THAT'S V, AS IN

13   VICTOR, O-N-G-X-A-Y.

14             AND, YOUR HONOR, THE REASON THAT 922(G)(9) IS, IN

15   FACT, A PRESUMPTIVELY LAWFUL MEASURE, WE SET FORTH IN OUR

16   PAPERS, DOMESTIC VIOLENCE IS A VERY SERIOUS CRIME, AND IT IS

17   NOT A CRIME THAT CAN BE LIKENED TO A FELONY OF LYING TO A

18   FEDERAL OFFICER, PER SE, BECAUSE VIOLENCE IS SPECIFIC TO THE

19   DOMESTIC VIOLENCE MISDEMEANOR.  IT REQUIRES THAT AN ACT OF

20   VIOLENCE WOULD HAVE OCCURRED.  AND SO BASED ON ALL OF THAT,

21   WE DO BELIEVE THAT IT IS A PRESUMPTIVELY LAWFUL MEASURE.

22             WE ALSO DO NOT BELIEVE THAT STRICT SCRUTINY APPLIES.

23   MR. JONES TALKED ABOUT THE SECOND AMENDMENT AND THAT IT IS,

24   IN FACT, A FUNDAMENTAL RIGHT AND THAT IT ONLY REFERS TO THE

25   PEOPLE.  WELL, IN FACT, THE PEOPLE IN THAT TIME PERIOD WOULD

1   HAVE BEEN WHITE LANDOWNERS AT THAT POINT.  AND EVEN IF IT IS

2   A FUNDAMENTAL RIGHT, THERE WERE, IN FACT, RESTRICTIONS GOING

3   ALL THE WAY BACK TO 1689 AND THE DECLARATION OF RIGHTS, THE

4   ENGLISH DECLARATION OF RIGHTS.  THERE WERE, IN FACT,

5   RESTRICTIONS THAT WERE PLACED ON THE PEOPLE, WHOEVER THEY MAY

6   BE, IN TERMS OF OWNING GUNS.

7           AND EVEN IN THAT TIME PERIOD, WHERE MANY PEOPLE

8   OWNED GUNS BECAUSE THEY HAD TO SHOOT THEIR OWN FOOD AND

9   WHATNOT, AND THEY WERE TRYING TO CONQUER THE WEST, INDEED

10  RESTRICTIONS EXISTED.  AND WE CITED A COUPLE OF THOSE IN OUR

11  PAPERS.  FOR EXAMPLE, IN VIRGINIA, VIRGINIA DISARMED PEOPLE

12  WHO REFUSED TO SWEAR TO AN OATH OF LOYALTY.  IN ADDITION,

13  YOUR HONOR, DURING THAT TIME PERIOD, DOMESTIC VIOLENCE WAS A

14  CRIME; AT LEAST IN A COUPLE OF THE COLONIES IT WAS A CRIME.

15          SO IN THAT WAY, IN TRYING TO APPLY STRICT SCRUTINY

16  TO THIS FUNDAMENTAL RIGHT IS THE DEFENDANT'S ATTEMPT TO GIVE

17  HIMSELF MORE RIGHTS THAN PEOPLE HAD EVEN AT THE TIME OF THE

18  BILL OF RIGHTS.  AND SO FOR THAT REASON STRICT SCRUTINY DOES

19  NOT APPLY AT ALL.

20          WE BELIEVE THAT INTERMEDIATE SCRUTINY DOES APPLY AND

21  WE'D LIKE TO GO INTO FURTHER DISCUSSION OF THAT IN WRITING

22  FIRST BEFORE WE ARGUE THAT PARTICULAR POINT.  I HAD

23  ANTICIPATED THAT THERE WOULD BE ADDITIONAL BRIEFING AND THAT

24  WE WOULD ARGUE THAT POINT.  BUT FOR THAT REASON, WE BELIEVE

25  THAT INTERMEDIATE SCRUTINY DOES, IN FACT, APPLY.

1          ADDRESSING THE NEXT POINT, AS TO THE ISSUE OF

2     VALERIO AND WHETHER OR NOT THE DEFENDANT'S RIGHTS HAVE BEEN

3     RESTORED.  YOUR HONOR, I THINK THAT VALERIO IS VERY

4     INDICATIVE THERE, BECAUSE THAT DEFENDANT HAD, IN FACT, HAD

5     TWO RIGHTS RESTORED:  HIS RIGHT TO VOTE AND HIS RIGHT TO BEAR

6     ARMS AS WELL.  AND THE NINTH CIRCUIT FOUND IN THAT CASE

7     THAT -- IN CITING CARON FOUND -- AND THIS IS CITED IN MY

8     PAPERS -- THAT CONGRESS MEANT TO KEEP GUNS AWAY FROM ALL

9     OFFENDERS WHO THE FEDERAL GOVERNMENT FEARED MIGHT CAUSE HARM,

10    EVEN IF THOSE PERSONS WERE NOT DEEMED DANGEROUS BY THE STATE.

11         AND SO IN THAT WAY, VALERIO FOUND THAT EVEN IF A

12    STATE -- IN PARTICULAR, IN THIS CASE, NEW MEXICO.  NEW MEXICO

13    EVEN FILED AN AMICUS BRIEF IN THAT CASE, SAYING THAT THEY

14    FELT THAT THAT DEFENDANT DID, IN FACT, HAVE THE RIGHT TO

15    POSSESS FIREARMS.  THE NINTH CIRCUIT FOUND THAT REGARDLESS OF

16    ALL THAT, CONGRESS HAS THE RIGHT TO DEEM THAT THERE IS A

17    CERTAIN SECTION OF THE POPULATION, CERTAIN KINDS OF PEOPLE

18    WHO, IN FACT, CANNOT POSSESS FIREARMS.  AND THAT'S, IN FACT,

19    WHAT CONGRESS DID WITH 922(G)(9).

20         ON THE DEFENDANT'S NEXT POINT, HE ARGUES THE EQUAL

21    PROTECTION CLAIM, AND HE ARGUES THAT IN OTHER STATES HE MIGHT

22    BE ABLE TO POSSESS A FIREARM.  BUT, YOUR HONOR, IN CALIFORNIA

23    ITSELF, EVEN IF THE DEFENDANT WERE ALLOWED TO EXPUNGE HIS

24    CONVICTION UNDER CALIFORNIA PENAL CODE 1203.4, EVEN IF HE HAD

25    EXPUNGED HIS CONVICTION DURING THAT TEN-YEAR PERIOD AFTER HIS

1    CONVICTION, THE STATUTE SPECIFICALLY SAYS THAT HE -- THAT IT

2    WOULD NOT PROHIBIT HIM FROM BEING PROSECUTED UNDER FEDERAL

3    FIREARM REGULATIONS.

4            AND SO EVEN IN THIS CASE, WHERE HE'S JUST OUTSIDE OF

5    THIS TEN-YEAR PERIOD, BUT EVEN WITHIN THAT TEN-YEAR PERIOD

6    EVEN IF HE HAD GOTTEN HIS CONVICTION EXPUNGED, WHICH HE DID

7    NOT, CALIFORNIA WOULD NOT HAVE ALLOWED HIM TO POSSESS A

8    FIREARM.

9            GOING BACK TO THIS EQUAL PROTECTION CLAIM THAT HE

10   HAS.  HE'S NOT PART OF ANY SUSPECT CLASS.  AND SO, IN FACT,

11   YOU KNOW, THE NINTH CIRCUIT HAS ADDRESSED THESE ISSUES IN THE

12   PAST WITH 922(G)(9); ADMITTEDLY, THEY DID DO SO PRE-HELLER.

13   BUT IT DOESN'T CHANGE THE FACT THAT -- IT DOES NOTE THAT

14   SOMEONE WITH A FELONY MIGHT BE ABLE TO POSSESS A FIREARM IN

15   ANOTHER STATE, WHEREAS HE CANNOT.  YOUR HONOR, THERE IS A

16   REASON FOR THAT.  AND IT ALL GOES BACK TO, AGAIN, THE BASICS

17   OF THE OFFENSE, WHICH IS THE FACT THAT HE HAS A MISDEMEANOR

18   CRIME OF DOMESTIC VIOLENCE, WHICH HAS AN ACT OF VIOLENCE AS

19   THE ESSENTIAL PART OF THAT CRIME.

20           AND SO BASED ON ALL OF THAT, WE BELIEVE THAT HIS

21   MOTION SHOULD BE DENIED.  BUT WE DO WISH TO ADDRESS IN

22   WRITING MORE SPECIFICALLY OUR ARGUMENT AS TO WHY INTERMEDIATE

23   SCRUTINY SHOULD APPLY.

24           THE COURT:  ALL RIGHT.  THANK YOU.

25           VALERIO, SIR.  HOW IS YOUR CASE DIFFERENT FROM THE

1    NEW MEXICO CASE?

2         MR. JONES:  YOUR HONOR, IN THE VALERIO CASE, THE

3    DEFENDANT HAD NOT AT ALL -- DID NOT HAVE ALL OF HIS CIVIL

4    RIGHTS AT THE TIME THAT THE COURT WAS DECIDING IT.  HE WAS

5    TRYING TO SAY, I'VE RECEIVED THESE RIGHTS BACK AND THAT

6    SHOULD BE ENOUGH.  AND THE COURT SAID, WELL, THE RESTORATION

7    OF RIGHTS DOESN'T HAVE TO BE COMPLETE, BUT IT HAS TO BE

8    SUBSTANTIAL.  AND THEN IT WENT THROUGH THE LIST OF RIGHTS

9    THAT HAVE BEEN TAKEN AWAY AND WHICH ONES HAD BEEN GOTTEN

10   BACK.

11        THE REASON THAT THIS CASE IS DIFFERENT IS MR. CHOVAN

12   IS NOT WITHOUT ANY OF HIS RIGHTS.  HE HAS EVERY CIVIL RIGHT

13   THAT ANY OTHER PERSON IN THE STATE OF CALIFORNIA HAS.  HE HAS

14   THE RIGHT TO VOTE, THE RIGHT TO SIT ON A JURY, THE RIGHT TO

15   HOLD PUBLIC OFFICE AND THE RIGHT TO BEAR ARMS; SO THAT MAKES

16   HIM VERY DIFFERENTLY SITUATED FROM THE DEFENDANT IN VALERIO,

17   WHO HAD HAD SOME OF HIS RIGHTS, AND THE COURT WAS ATTEMPTING

18   TO DETERMINE, WELL, HAS IT BEEN ENOUGH FOR US TO SAY THAT

19   HE'S HAD HIS CIVIL RIGHTS RESTORED.  WELL, IF YOU'VE ONLY HAD

20   ONE CIVIL RIGHT TAKEN AWAY, YOU CAN ONLY GET ONE BACK.

21        BUT IT DOES REPRESENT -- AND BECAUSE IT WAS THE

22   RIGHT TO BEAR ARMS, IT DOES REPRESENT THE STATE SAYING, WE'VE

23   DETERMINED THAT THIS PERSON, AFTER TEN YEARS, NO LONGER POSES

24   THE THREAT THAT THEY USED TO AND CAN POSSESS FIREARMS.

25        THE COURT:  WHAT ABOUT THE COURT'S DISCUSSION OF THE

1   CONGRESSIONAL INTENT IN CASES LIKE THIS WHERE A PERSON SHOULD

2   NEVER HOLD A FIREARM -- POSSESS A FIREARM BECAUSE OF THE

3   NATURE OF THE CRIME ITSELF?

4           MR. JONES:  YES, YOUR HONOR.  AND THAT WAS -- ONE

5   POINT I WANTED TO MAKE, IS THAT LANGUAGE IN VALERIO ACTUALLY

6   WHERE THEY SAY, THE PURPOSE OF THE STATUTE WAS TO MAKE SURE

7   THAT ANYBODY WHO HAS HAD THESE OFFENSES IS PREVENTED FROM

8   HAVING A FIREARM, IS ACTUALLY CONTRADICTED BY THE LANGUAGE

9   THAT I INDICATED IN THE SUPREME COURT CASE LOGAN BEFORE THAT

10  INDICATED THAT ONE OF THE PRIMARY PURPOSES WAS TO DEFER TO

11  THE STATES.  THAT'S THE LANGUAGE THAT THEY USE, TO DEFER TO A

12  STATE'S DISPENSATION RELIEVING AN OFFENDER FROM DISABLING

13  EFFECTS OF A CONVICTION.

14          CONGRESS MADE A VERY EXPLICIT CHOICE AFTER THE

15  SUPREME COURT IN DICKERSON HELD THAT THE -- THAT THEY WOULD

16  GO ONLY BY FEDERAL LAW AND THAT IT WOULD BE FEDERALLY

17  DETERMINED UNIFORMLY.  CONGRESS WENT OUT AND TOOK THE EXTRA

18  INITIATIVE AND SAID, WE'RE GOING TO OVERTURN DICKERSON BY

19  STATUTE, AND WE'RE GOING TO DEFER TO THE STATES TO LET THEM

20  DECIDE.

21          SO IT'S NOT -- SO THE LANGUAGE IN VALERIO REGARDING

22  CONGRESS' INTENT IS ACTUALLY CONTRADICTED BY THE SUPREME

23  COURT PRECEDENT, WHICH SAYS THAT ONE OF THE PURPOSES OF THAT

24  STATUTE WAS TO DEFER TO THE STATES TO MAKE THIS

25  DETERMINATION.  AND THAT'S REALLY WHERE MOST OF THESE

1    PROBLEMS COME FROM, IT'S FROM CONGRESS' DECISION TO DEFER TO

2    THE STATES TO MAKE THESE TYPES OF DETERMINATIONS.

3         THE COURT:  BUT AREN'T I REQUIRED TO FOLLOW NINTH

4    CIRCUIT LAW?

5         MR. JONES:  WELL, I BELIEVE YOUR -- IF THERE IS

6    BINDING SUPREME COURT PRECEDENT ON THE ISSUE, I BELIEVE

7    YOU'RE REQUIRED TO FOLLOW SUPREME COURT CASE LAW; ESPECIALLY

8    CONSIDERING THAT LOGAN CAME AFTER VALERIO.

9         A COUPLE OTHER POINTS THAT I WANTED TO ADDRESS --

10        THE COURT:  BEFORE YOU DO -- I'LL ALLOW YOU TO

11   REBUT -- BUT HOW AM I GUIDED TO FOLLOW YOUR ARGUMENT THAT ALL

12   PERSONS UNDER THE SECOND AMENDMENT IS A SUSPECT CLASS THAT

13   WARRANTS STRICT SCRUTINY?

14        MR. JONES:  WELL, YOUR HONOR, UNDER EQUAL PROTECTION

15   JURISPRUDENCE, YOU CAN REACH HEIGHTENED SCRUTINY NOT ONLY BY

16   THE FACT THAT A SUSPECT CLASS IS INVOLVED, BUT IF PEOPLE ARE

17   BEING DIFFERENTIATED WITH REGARD TO A FUNDAMENTAL RIGHT.

18        IT'S OUR POSITION THAT THE RIGHT TO BEAR ARMS UNDER

19   THE SECOND AMENDMENT IS A FUNDAMENTAL RIGHT AND, THUS, UNDER

20   EQUAL PROTECTION, FOR THAT REASON, IT WOULD BE -- ANY STATUTE

21   INFRINGING OR ANY STATUTE TREATING PEOPLE DIFFERENTLY, WHO

22   ARE SIMILARLY SITUATED, WOULD BE SUBJECT TO A HIGHER LEVEL OF

23   SCRUTINY BECAUSE OF THE FUNDAMENTAL RIGHT.

24        WE DO NOT CONTEND THAT MR. CHOVAN IS A MEMBER OF A

25   SUSPECT CLASS, AS CASE LAW HAS CLEARLY INDICATED THAT PEOPLE

24

1    CONVICTED OF A CRIME DO NOT CONSTITUTE A SUSPECT CLASS.

2            THE COURT:  ALL RIGHT.  YOU MAY CONTINUE, SIR.

3            REBUTTAL.

4            MR. JONES:  THE ONLY OTHER POINTS THAT I WANTED TO

5    MAKE WERE THAT THE GOVERNMENT INDICATED THAT DOMESTIC

6    VIOLENCE IS A VERY SERIOUS CRIME, AND THAT'S WHY WE SHOULD

7    PRESUME THAT THIS IS A PRESUMPTIVELY LAWFUL REGULATION; BUT I

8    THINK THAT SOMEWHAT CONFUSES THE ISSUE.  IF WE'RE GOING TO GO

9    TO THE STEP THAT WE'RE SAYING, OKAY, HOW IMPORTANT IS THE

10   GOVERNMENT'S INTEREST, THEN THAT MEANS WE HAVE TO GET INTO

11   WHAT LEVEL OF SCRUTINY WE'RE TALKING ABOUT AND PERFORM THAT

12   DETAILED ANALYSIS.

13           THE MERE FACT THAT SOME PEOPLE MAY VIEW IT AS

14   IMPORTANT THAT WE KEEP FIREARMS OUT OF THE HANDS OF PEOPLE

15   WHO HAVE BEEN CONVICTED OF DOMESTIC VIOLENCE DOES NOT AFFECT

16   THE -- ESSENTIALLY THE PLAIN LANGUAGE OR TRADITIONALIST LOOK

17   AT THE SECOND AMENDMENT TO DETERMINE WHETHER OR NOT SOME

18   PEOPLE ARE JUST EXCLUDED AND NOT -- DO NOT HAVE THAT

19   CONSTITUTIONAL RIGHT.

20           SO THE CONTEMPORARY CONCERN AS TO WHETHER OR NOT THE

21   LAW IS APPROPRIATE OR THE IMPORTANCE OF IT SHOULD NOT FACTOR

22   INTO DETERMINING WHETHER OR NOT WE APPLY SCRUTINY.  IT SHOULD

23   BE A DETERMINATION OF WHETHER OR NOT THE SUPREME COURT'S

24   LANGUAGE IN HELLER SPECIFICALLY FORECLOSES THE ARGUMENT THAT

25   MR. CHOVAN IS PRESENTING.

1          THE GOVERNMENT ALSO INDICATED THAT DOMESTIC VIOLENCE

2     WAS A CRIME AT THE TIME OF THE FOUNDING.  WELL, IT WAS A

3     CRIME, AND IT -- ALSO AT THE TIME OF THE FOUNDING, THE PEOPLE

4     WHO WERE CONVICTED OF IT WERE NOT PREVENTED FROM POSSESSING

5     FIREARMS; SO I THINK THAT THAT FACT OR THAT POINT GOES BOTH

6     WAYS.

7          AND THE LAST THING IS, IN ADDRESSING THE EQUAL

8     PROTECTION ARGUMENT, THE GOVERNMENT ADDRESSED ARGUMENTS THAT

9     FELONS IN OTHER DISTRICTS MIGHT BE ABLE TO HAVE THEIR RIGHTS

10    RESTORED, WHERE MR. CHOVAN CANNOT, BY SAYING THAT THERE IS A

11    REASON FOR THAT, THAT BECAUSE MR. CHOVAN HAS BEEN CONVICTED

12    OF A CRIME OF DOMESTIC VIOLENCE.  I JUST WANT IT TO BE CLEAR

13    ON THE RECORD THAT PEOPLE WHO HAVE BEEN CONVICTED OF FELONY

14    CRIMES OF VIOLENCE IN OTHER STATES CAN HAVE THEIR CIVIL

15    RIGHTS RESTORED AND DO HAVE THEIR CIVIL RIGHTS RESTORED

16    AUTOMATICALLY AFTER A CERTAIN TIME PERIOD IN OTHER STATES, AS

17    IS INDICATED IN THE BRIEFING.

18          SO IT'S NOT AS THOUGH THAT THERE IS SOMETHING IN THE

19    STATUTE THAT DISCRIMINATES BETWEEN PEOPLE THAT HAVE BEEN

20    CONVICTED OF CRIME AND VIOLENCE AND PEOPLE WHO HAVEN'T.

21    THERE IS NO DISTINCTION MADE WHATSOEVER.  AND PEOPLE WHO HAVE

22    BEEN CONVICTED OF CRIMES OF VIOLENCE THAT ARE MUCH MORE

23    SERIOUS AND HAVE RECEIVED MUCH MORE SERIOUS SENTENCES THAN

24    MR. CHOVAN ARE IN A BETTER POSITION WITH REGARD TO THIS LAW,

25    BECAUSE THEY CAN HAVE THEIR CIVIL RIGHTS RESTORED PRESUMING,

1    OF COURSE, OBVIOUSLY THAT THE COURT IS NOT DETERMINING THAT

2    MR. CHOVAN HAS HAD HIS CIVIL RIGHTS RESTORED, BECAUSE HIS

3    RIGHT TO BEAR ARMS HAS BEEN REINSTATED.

4            THE COURT:  GOING BACK TO YOUR RESPONSE BEFORE THAT,

5    YOUR RESPONSE BEFORE THAT ONE DEALING WITH THE

6    PRE-CONSTITUTIONAL HISTORY WHERE RIGHTS -- WHERE INDIVIDUALS

7    DID NOT HAVE A RIGHT TO BEAR ARMS BECAUSE OF CIRCUMSTANCES

8    SHORT OF A CONVICTION AT ALL.  THAT WAS THE VIRGINIA

9    CIRCUMSTANCE WHERE IF YOU WEREN'T LOYAL, TO PLEDGE LOYALTY,

10   THEN YOU HAD NO RIGHT TO CARRYING A GUN.  THERE IS NO CRIME

11   INVOLVED AT ALL.  AND THAT WAS PRE-BILL OF RIGHTS, PRE-SECOND

12   AMENDMENT.

13           MR. JONES:  THAT'S CORRECT, YOUR HONOR.  I MEAN --

14           THE COURT:  SO THERE IS A GOVERNMENT REGULATION THAT

15   REQUIRED -- THAT RESTRICTED THE USE OF FIREARMS EVEN WITHOUT

16   A CONVICTION AT ALL.

17           MR. JONES:  YES, YOUR HONOR.  THAT IS CORRECT THAT

18   THERE WAS THAT ONE REGULATION.  HOWEVER, FIRST OF ALL, I

19   THINK WE HAVE TO LOOK BROADER THAN SIMPLY ONE REGULATION.

20           BUT ANOTHER -- ANOTHER POINT REGARDING THE -- THIS

21   LOOK AT HISTORY TO DETERMINE WHETHER OR NOT A PERSON HAD THE

22   RIGHT TO POSSESS A FIREARM IS WHEN THE SUPREME COURT IN

23   HELLER INDICATED PRESUMPTIVELY LAWFUL REGULATIONS, IF WE'RE

24   GOING TO SAY, OKAY, WELL, AT THE TIME OF THE FOUNDING, THERE

25   WAS ONE COLONY THAT SAID, YOU KNOW, IF YOU DON'T PLEDGE US

1    ALLEGIANCE, IF YOU HAVE LOYALTIES ELSEWHERE, YOU CAN'T

2    POSSESS A FIREARM; THEREFORE, ALL REGULATIONS ARE

3    APPROPRIATE, THEN HELLER WOULD BE WRONGLY DECIDED.

4         HELLER STRIKES DOWN A REGULATION.  HELLER SAYS THAT

5    THE DISTRICT OF COLOMBIA'S REGULATION REGARDING THE HANDGUN

6    BAN IS UNCONSTITUTIONAL.  THAT IS -- YOU KNOW, THAT IS A

7    REGULATION THAT THE SUPREME COURT SAID VIOLATES THE SECOND

8    AMENDMENT.

9         IF WE WERE TO SAY, MERELY BECAUSE THERE WERE LAWS

10   THAT ALLOW THE GOVERNMENT TO PREVENT SOMEBODY FROM POSSESSING

11   A FIREARM AT THE TIME OF THE FOUNDING, THEREFORE, ANY

12   REGULATION THAT THE GOVERNMENT CAN COME UP WITH IS GOING TO

13   BE PRESUMPTIVELY LAWFUL, SUCH THAT WE WON'T EVEN ENGAGE IN

14   ANY SORT OF SCRUTINY TO DETERMINE WHAT THE GOVERNMENT'S

15   REASONING BEHIND IT IS, I THINK THAT WOULD COMPLETELY MAKE

16   HELLER A NULLITY.  IT WOULD HAVE NO EFFECT BEYOND ITS FACTS

17   AT THAT POINT.  AND I THINK THE LANGUAGE IN HELLER IS VERY

18   STRONG AND CLEAR THAT WE'RE SAYING THAT THIS IS AN INDIVIDUAL

19   RIGHT.

20        THE COURT:  ALL RIGHT.  THANK YOU.

21        MR. JONES:  AND I THINK UNLESS THE COURT HAS OTHER

22   QUESTIONS, THAT WE WOULD SUBMIT.

23        THE COURT:  ALL RIGHT.  THANK YOU.

24        ANYTHING FURTHER FROM THE UNITED STATES?

25        MS. HAN:  YOUR HONOR, JUST BRIEFLY, ON A COUPLE OF

1    POINTS, SPECIFICALLY TO THE ISSUE ABOUT THE SECOND AMENDMENT

2    RIGHT BEING A FUNDAMENTAL RIGHT AND STRICT SCRUTINY APPLYING.

3         YOUR HONOR, EVEN IN OTHER FUNDAMENTAL RIGHTS, FOR

4    EXAMPLE, THE FIRST AMENDMENT, THERE ARE, IN FACT, SOME

5    RESTRICTIONS THAT ARE PLACED ON THAT UNDER A CONSTITUTIONAL

6    ANALYSIS; FOR EXAMPLE, A TIME, PLACE AND MANNER.

7         AND SO, AGAIN, THE DEFENDANT ATTEMPTS TO GIVE

8    HIMSELF MORE RIGHTS THAN WERE GIVEN TO OTHER FUNDAMENTAL

9    RIGHTS AND EVEN MORE RIGHTS TO -- THAN WERE GIVEN TO THE

10   PEOPLE AT THE TIME OF THE FOUNDING OF THE NATION, IT SEEMS

11   INAPPROPRIATE AT THIS POINT.

12        IN ADDITION, YOUR HONOR, SPECIFICALLY PRIOR -- IN

13   HIS EARLIER ARGUMENT, THE DEFENDANT HAD DISCUSSED AN ISSUE IN

14   TERMS OF EQUAL PROTECTION ABOUT HIS KNOWLEDGE OF THE

15   RESTRICTION ON HIM TO POSSESS THE FIREARMS.  SPECIFICALLY,

16   YOUR HONOR, AS TO THIS CASE, IT'S NOT AN ISSUE.  THE

17   DEFENDANT SOUGHT TO PURCHASE A FIREARM AND WAS THEN NOTIFIED

18   THAT, IN FACT, HE WAS NOT ALLOWED TO BUY A FIREARM.  THAT

19   OCCURRED IN OCTOBER OF 2009.  THE EXECUTION OF THE SEARCH

20   WARRANT ON HIS HOME OCCURRED IN APRIL OF 2010.  SO THE ISSUE

21   OF NOTICE IS NOT ONE THAT I THINK IS A VALID CLAIM IN THIS

22   PARTICULAR CASE.

23        SO -- AND WITH THAT, WE WOULD SUBMIT.

24        THE COURT:  ALL RIGHT.  THANK YOU.

25        I'M GOING TO TAKE THIS MATTER UNDER SUBMISSION AND

1   SET IT OVER TO THE 19TH OF JULY, 10:30.  AND IF -- DURING THE

2   COURSE OF MY REVIEW, IF I DETERMINE THAT SUPPLEMENTAL

3   BRIEFING ON THE LEVEL OF EVALUATION IS NECESSARY, I'LL LET

4   THE PARTIES KNOW BY ORDER.  ALL RIGHT.

5          BUT I'D LIKE TO TAKE A LOOK AT THE BIDDING AS IT IS

6   NOW.  I'VE REVIEWED IT.  IN LIGHT OF THIS ARGUMENT, I'D LIKE

7   TO TAKE -- RELOOK AT THE BIDDING.  AND THE MATTER IS UNDER

8   SUBMISSION.

9          OUR NEXT DATE IS, SIR, THE 19TH OF JULY, 10:30.

10          THE DEFENDANT:  THANK YOU, YOUR HONOR.

11          MR. JONES:  YOUR HONOR, THERE IS ONE OTHER MATTER I

12   WANTED TO DIRECT THE COURT'S ATTENTION TO.

13          WE DID JUST THIS MORNING, OVER THE WEEKEND, FILE A

14   DECLARATION THAT WOULD DIRECT THE COURT'S ATTENTION TO --

15   WITH REGARD TO THE SECOND AMENDMENT VIOLATION, INDICATING

16   THAT MR. CHOVAN, THE PURPOSE FOR WHICH THE FIREARMS WERE KEPT

17   IN MR. CHOVAN'S HOME WERE FOR SELF-DEFENSE, AS I THINK THAT

18   COULD PLAY INTO THE SECOND AMENDMENT ANALYSIS.

19          THE COURT:  I HAVE NOT SEEN IT.  THE COURT WILL

20   ACCEPT IT.  I'LL ALLOW THE GOVERNMENT TO RESPOND TO THE

21   DECLARATION BY NEXT MONDAY, IF YOU CARE TO DO SO, THE 28TH OF

22   JUNE.

23          MS. HAN:  YES, YOUR HONOR.  THANK YOU.

24          YOUR HONOR, COULD WE ALSO SET A MOTION SCHEDULE FOR

25   THE REST OF THE MOTIONS THAT MR. JONES REFERRED TO THAT HE

1    WANTED TO FILE, SO THAT WE CAN GO AHEAD AND --

2         THE COURT:  ALL RIGHT.  HOW LONG WOULD IT TAKE YOU

3    TO FILE THOSE MOTIONS, SIR?  HOW MUCH TIME DO YOU NEED?

4    YOU'RE SPEAKING MOTIONS WITH RESPECT TO SUPPLEMENTAL BRIEFING

5    ON THESE ISSUES?

6         MR. JONES:  NO, YOUR HONOR.  SPECIFICALLY ONE -- IT

7    WOULD BE A SOMEWHAT SIMILAR ISSUE WITH REGARD TO DUE PROCESS

8    WITH THE NOTICE ISSUE THAT COUNSEL JUST ADDRESSED AND ALSO

9    ONE FOR VAGUENESS THAT I SPOKE ABOUT, AND ALSO REGARDING THE

10   UNDERLYING CONVICTION IN THIS CASE.

11        SO I COULD HAVE THEM FILED TWO WEEKS IN ADVANCE OF

12   THE JULY 19TH DATE, IF THAT'S -- SO THE 5TH I GUESS THAT

13   WOULD BE.

14        THE COURT:  NO.  IF I SUGGEST SUPPLEMENTAL BRIEFING

15   ON THIS POINT, I'D LIKE TO BE ABLE TO FULLY DIGEST THAT AS

16   OPPOSED TO THE NEW MOTIONS AT THE SAME TIME, IN LIGHT OF MY

17   CALENDAR, SIR.

18        MR. JONES:  OKAY.

19        THE COURT:  WE'LL SET A FURTHER HEARING DATE FOR

20   9 AUGUST FOR OTHER MOTIONS.  SO WE'LL HAVE TWO MOTION HEARING

21   DATES.  SIR, THE 19TH OF JULY AND 9 AUGUST FOR NEW MOTIONS TO

22   BE FILED.

23        MR. JONES:  OKAY.  AND WHAT'S THE TIME ON

24   AUGUST 9TH?

25        THE COURT:  10:30.

1          MR. JONES:  THANK YOU, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  ANYTHING ELSE AT THIS POINT?

3          MS. HAN:  NO, YOUR HONOR.

4          THE COURT:  APPRECIATE YOUR INPUT.  THANK YOU VERY

5    MUCH.

6          MR. JONES:  THANK YOU, YOUR HONOR.

7          THE DEFENDANT:  THANK YOU, YOUR HONOR.

8          THE COURT:  THANK YOU, SIR.

9          (PROCEEDINGS CONCLUDED AT 11:30 A.M.)

10                         --OOO--

11            C E R T I F I C A T I O N

12          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
13   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
     CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
14   AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
     CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
15   FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
     OF THE UNITED STATES JUDICIAL CONFERENCE.

16

17          DATED:  APRIL 4, 2011, AT SAN DIEGO, CALIFORNIA.

                         S/CAMERON P. KIRCHER
18                       CAMERON P. KIRCHER

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION