1          UNITED STATES OF AMERICA
           UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF CALIFORNIA

3                     - - -
4          HONORABLE JOHN A. HOUSTON
       UNITED STATES DISTRICT JUDGE PRESIDING
5                     - - -

6  UNITED STATES OF AMERICA,    )
                                )
7           PLAINTIFF,          )
                                )
8  VS.                          ) NO. 10CR1805JAH
                                )
9  DANIEL EDWARD CHOVAN,        )
                                )
10          DEFENDANT.          )
   _____)
11

12                     **SENTENCING**
13
           REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                  **MARCH 21, 2011**
              SAN DIEGO, CALIFORNIA
15

16

17         MELISSA A. PIERSON, CSR 12499, RPR
            FEDERAL OFFICIAL COURT REPORTER
18           940 FRONT STREET, ROOM 3155
            SAN DIEGO, CALIFORNIA 92101
19              PH:  (619)702-7508
              PIERSON1121@SBCGLOBAL.NET
20

21

22

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:
              LAURA DUFFY
 3            UNITED STATES ATTORNEY
              BY:  MS. CAROLINE HAN, ESQ.
 4            ASSISTANT UNITED STATES ATTORNEYS
              880 FRONT STREET
 5            FIFTH FLOOR
              SAN DIEGO, CA 92101
 6

 7    ON BEHALF OF DEFENDANT:
              FEDERAL DEFENDERS OF SAN DIEGO
 8            BY:  MR. JOSHUA JONES, ESQ.
              225 W. BROADWAY
 9            9TH FLOOR
              SAN DIEGO, CA 92101
10            (619) 234-8467

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          SAN DIEGO, CALIFORNIA; MONDAY, MARCH 21, 2011

2                            - - -

3              (COURT IN SESSION AT 9:00 A.M.)

4          MADAM CLERK:  10CR1805, UNITED STATES OF AMERICA

5    VERSUS DANIEL EDWARD CHOVAN.

6          MR. JONES:  GOOD MORNING, YOUR HONOR.  JOSHUA

7    JONES, FEDERAL DEFENDERS, ON BEHALF OF MR. CHOVAN.  THANK YOU

8    FOR THE COURT ACCOMMODATING ME IN MY FLIGHT DELAY.

9          THE COURT:  THAT'S FINE.

10         MS. HAN:  GOOD MORNING, YOUR HONOR.  CAROLINE HAN

11   ON BEHALF OF THE UNITED STATES.

12         THE COURT:  GOOD MORNING.  MR. CHOVAN, HOW ARE YOU?

13         THE DEFENDANT:  FINE, THANK YOU.

14         THE COURT:  WE ARE HERE IN THIS MATTER FOR

15   SENTENCING.  I HAVE REVIEWED THE PRE-SENTENCE REPORT, YOUR

16   SENTENCING MEMORANDUM, YOUR REQUEST FOR BAIL PENDING APPEAL,

17   THE GOVERNMENT'S OPPOSITION TO BAIL PENDING APPEAL, THE

18   GOVERNMENT'S SENTENCING MEMORANDUM AND THE GOVERNMENT'S

19   SENTENCING CHART.

20         BEFORE WE BEGIN, TO THE GOVERNMENT, IS THERE ANY

21   REASON WHY EXHIBIT 3 TO YOUR MEMORANDUM SHOULD NOT BE UNDER

22   SEAL?

23         MS. HAN:  NO, YOUR HONOR, I DO NOT BELIEVE SO.

24   THERE IS NO REASON FOR THAT.

25         THE COURT:  ALL RIGHT.  THE COURT ORDERS THAT

1  EXHIBIT NO. 3 TO THE GOVERNMENT'S SENTENCING MEMORANDUM

2  SHOULD BE FILED UNDER SEAL.

3           MR. JONES:  THANKS, YOUR HONOR.

4           THE COURT:  COUNSEL, I WOULD LIKE TO HEAR FROM YOU.

5           MR. JONES:  YES, YOUR HONOR.  I THINK IT'S FAIR TO

6  SAY --

7           THE COURT:  EXCUSE ME.  WE START --

8           MR. JONES:  THIS IS SOMEWHAT OF AN UNUSUAL CASE.

9  IF YOU JUST LOOK AT THE BEAR FACTS OF THE CASE, YOU WOULD SAY

10  THAT THIS IS NOT A VERY AGGRAVATED MISDEMEANOR IN POSSESSION

11  OFFENSE.  MR. CHOVAN'S MISDEMEANOR, AS THE COURT IS WELL

12  AWARE, IS 15 YEARS OLD AT THIS POINT.  THE THINGS THAT THE

13  GOVERNMENT POINTS TO TO MAKE IT MORE AGGRAVATED ARE SPECIFIC

14  CIRCUMSTANCES WITH REGARD TO MR. CHOVAN.  THE FACT THAT THE

15  AUTHORITIES WERE ALERTED TO HIS PRESENCE BY A CALL FROM HIS

16  WIFE, WHICH OBVIOUSLY RELATES BACK, EVEN THOUGH THE PREVIOUS

17  CONVICTION IS DATED, WE CAN UNDERSTAND WHY THAT MIGHT GIVE

18  THE GOVERNMENT SOME CONCERN.

19           HOWEVER, I THINK THAT MR. CHOVAN, IN THIS INSTANCE,

20  THERE IS NO INDICATION WHATSOEVER THAT HE HAS EVER USED A

21  FIREARM IN AN INAPPROPRIATE MANNER, OR EVEN THAT HE HAS USED

22  ONE OUTSIDE THE PREMISES OF HIS OWN RESIDENCE.

23           THE FIREARMS THAT MR. CHOVAN HAD HE RECEIVED FROM

24  HIS FATHER -- OR HIS STEPFATHER, WHO'S PRESENT HERE TODAY,

25  ALONG WITH MR. CHOVAN'S MOTHER, HIS GIRLFRIEND, AND HIS

1    GIRLFRIEND'S MOTHER, AS WELL, ARE ALL HERE TO SHOW SUPPORT.

2    HE RECEIVED THE FIREARMS AFTER THE MOTHER DECIDED SHE DIDN'T

3    WANT THE FIREARMS IN HER HOME ANY MORE THAT

4    MR. CHOVAN TOOK THEM IN.

5            AS THE COURT WAS AWARE, THERE WAS ORIGINALLY A

6    CHARGE IN THIS CASE PREVIOUSLY THAT HE HAD USED -- OR MADE A

7    FALSE STATEMENT ON AN APPLICATION TO PURCHASE THE FIREARM.

8    AND WE JUST WANTED TO CLARIFY FOR THE COURT THAT AS PART OF

9    THE DISPOSITION, THE COURT DID DISMISS THAT CHARGE.  BUT WE

10   MAINTAIN THAT MR. CHOVAN WAS FACTUALLY INNOCENT OF THAT

11   OFFENSE.  BECAUSE MR. CHOVAN WAS NOT AWARE -- HE WAS NOT

12   INTENTIONALLY TRYING TO DECEIVE THE PEOPLE AT THE SHOP.  IF

13   YOU LOOK AT THE FORM THAT HE FILLED OUT, AND IN AN ATTEMPT TO

14   PURCHASE IT, WHEN ASKED IF YOU HAVE BEEN CONVICTED OF A

15   MISDEMEANOR CRIME OF DOMESTIC VIOLENCE, HE CHECKED YES, AND

16   THEN HE SCRATCHES IT OUT ON THE FORM AND THEN CHECKED NO.

17   WHICH ARE NOT THE ACTIONS OF A PERSON WHO'S GOING IN THERE

18   DELIBERATELY TRYING TO DECEIVE SOMEONE.

19           AS THE COURT IS AWARE, THE LAW REGARDING WHETHER OR

20   NOT A PERSON IN MR. CHOVAN'S POSITION CAN POSSESS A FIREARM

21   ARE SOMEWHAT COMPLICATED.  WHEN HE WAS CONVICTED OF HIS

22   MISDEMEANOR 15 YEARS AGO, HE RECEIVED A FORM THAT TOLD HIM

23   THAT HE WAS BARRED FROM OWNING A FIREARM FOR TEN YEARS.  AT

24   THAT POINT IN TIME, THAT WAS TRUE.  UNDER CALIFORNIA STATE

25   LAW HE WAS ONLY BARRED FROM POSSESSING A FIREARM FOR TEN

1   YEARS.  AT THAT TIME, FEDERAL LAW HAD NOT YET BEEN AMENDED TO

2   MAKE IT ILLEGAL FOR PEOPLE WHO HAD BEEN CONVICTED OF A

3   MISDEMEANOR CRIME OF DOMESTIC VIOLENCE TO OWN A FIREARM.

4        WE ACKNOWLEDGE THAT THE CURRENT STATE OF THE LAW IS

5   THAT MR. CHOVAN CANNOT POSSESS A FIREARM, NOT WITHSTANDING

6   THE MOTIONS AND OTHER LITIGATION REGARDING **HELLER** AND THE

7   SECOND AMENDMENT.  WE DONT' DISPUTE THAT LEGALLY, BUT I THINK

8   IT'S A FACTUAL MATTER FOR MR. CHOVAN.  HE REALLY WAS NOT --

9   IT MAY HAVE BEEN A LITTLE BIT OF WISHFUL THINKING ON HIS

10  POINT AFTER HE RECEIVED THE DENIAL OF HIS ATTEMPT TO PURCHASE

11  THE FIREARM.  BUT AT THE TIME HE WAS ATTEMPTING TO PURCHASE

12  THAT FIREARM, I THINK HE HONESTLY BELIEVED THAT HE COULD

13  POSSESS A FIREARM AFTER TEN YEARS, AND THAT WAS AFTER HE

14  RECEIVED THE FIREARMS FROM HIS FATHER AS WELL.  I THINK, IN

15  THE AREA WHERE MR. CHOVAN GREW UP, AND SPEAKING WITH HIS

16  STEPFATHER, MANY PEOPLE IN THAT AREA HAVE THE KINDS OF

17  FIREARMS THAT MR. CHOVAN HAD, SHOT GUNS AND RIFLES AND THINGS

18  LIKE THAT.  BECAUSE THERE IS WILDLIFE OUT THERE AND THEY DO

19  USE THE FIREARMS FOR THOSE PURPOSES.

20       NOW, WE ACKNOWLEDGE, AND MR. CHOVAN ACKNOWLEDGES,

21  AT THE TIME THIS INVESTIGATION WAS GOING ON, AND HE HAD

22  CONNECTIONS TO A VERY UNSAVORY ORGANIZATION, THE NSM

23  ORGANIZATION.  HOWEVER, AT THE TIME THAT HE WAS INVESTIGATED,

24  HE WAS PICKED UP BY THE FBI.  HE WENT IN.  HE SPOKE WITH

25  THEM.  HE DEBRIEFED WITH THEM.  HE EXPLAINED THAT AS A RESULT

1    OF AN INCIDENT THAT OCCURRED AT ONE OF THEIR GATHERINGS WHERE

2    HIS GIRLFRIEND WAS ASSAULTED, THAT HE HAD CUT MANY OF HIS

3    TIES WITH THOSE PEOPLE.

4         NOW, UNDENIABLY MR. CHOVAN DOES HAVE CONNECTIONS TO

5    PEOPLE IN THAT ORGANIZATION.  HE KNOWS THEM.  AND I THINK

6    THAT'S BECAUSE OF A LOT OF THINGS THAT HE DID IN HIS YOUTH,

7    AND ALSO AS A RESULT OF WHERE HE GREW UP AND I THINK THAT A

8    LOT OF PEOPLE CAN RELATE TO THAT.  THERE IS -- I GREW UP ON

9    THE SOUTH SIDE OF CHICAGO.  THERE IS A LOT OF PEOPLE THAT I

10   KNOW THAT MY PARENTS PROBABLY ARE NOT PARTICULARLY PLEASED

11   THEY ARE MY ASSOCIATES, BUT THAT DOESN'T MEAN THAT I'M

12   NECESSARILY INVOLVED WITH THOSE PEOPLE OR GOING TO CONTINUE

13   TO BE INVOLVED WITH THOSE PEOPLE IN A WAY THAT IS

14   INAPPROPRIATE.

15        I THINK MR. CHOVAN, AT THIS POINT IN HIS LIFE, IS

16   IN A SOMEWHAT SIMILAR SITUATION.  HE'S ALSO A MAN THAT'S

17   GOING TO HAVE A LOT ON HIS PLATE.  AS THE COURT IS AWARE OF

18   THE MENTAL HEALTH ISSUES THAT WERE DISCOVERED, I THINK THAT

19   THIS PROCESS HAS BEEN REALLY IMPORTANT FOR HIM.  BECAUSE THIS

20   IS THE FIRST TIME IN HIS LIFE HE HAS EVER BEEN ABLE TO HAVE

21   ACCESS TO COUNSELING.  THE COURT IS AWARE OF THE SUICIDE

22   ATTEMPT THAT HAPPENED IN THIS CASE.  I THINK THAT THIS

23   PROCESS OF BEING ON SUPERVISION AND HAVING TO ADDRESS THESE

24   CHARGES HAS REALLY GIVEN HIM AN OPPORTUNITY TO REASSESS HIS

25   LIFE AND START TRYING TO PUT THINGS BACK ON THE RIGHT TRACK.

1          I KNOW THE GOVERNMENT IS GOING TO LIKELY MAKE

2     REFERENCE TO THE FACT THIS ALLEGED PRETRIAL RELEASE VIOLATION

3     WAS NOT A VIOLATION.  I DON'T HAVE FULL FACTS ON THAT, BUT

4     THE DOCUMENTS THAT I'VE READ ESSENTIALLY AMOUNT TO MR. CHOVAN

5     AND ANOTHER PERSON BEING IN THE SALVATION ARMY STORE, AND

6     THEN CALLING THE POLICE, AND THEN COMING TO THE STORE, AND

7     THEN STILL BEING IN THE STORE AND HAVING MERCHANDISE.

8          NOW, I AM SURE MAYBE THERE ARE OTHER FACTS THAT I'M

9     UNAWARE OF, FOR MOST PEOPLE THAT'S CALLED SHOPPING, IF HE

10    NEVER LEFT THE PREMISES OF THE ESTABLISHMENT, AND IN THIS

11    CASE HIS PRETRIAL RELEASE WAS NEVER REVOKED.  AND I DON'T

12    WANT THAT TO BE ABLE TO SHY AWAY FROM ALL OF THE PROGRESS

13    THAT HE HAS MADE AND, I THINK, IN THIS TIME PERIOD.  HE HAS

14    BEEN ABLE TO FIND GAINFUL EMPLOYMENT WORKING AS A WELDER

15    AGAIN, AND AS THE COURT IS AWARE FROM THE PRE-SENTENCE

16    REPORT, HE HAS BEEN DOING THAT KIND OF WORK FOR A LONG TIME.

17         OTHER DEVELOPMENTS IN HIS LIFE ALSO PUT MORE

18    RESPONSIBILITY ON HIM.  I HAD HIS MOTHER WRITE A BRIEF LETTER

19    THAT SHE BROUGHT TO COURT TODAY.  WITH THE COURT'S

20    PERMISSION, I'D LIKE TO READ IT INTO THE RECORD.

21         THE COURT:  ALL RIGHT.

22         MR. JONES:  "YOUR HONOR, I'M DIANA PUGH, (PHONETIC)

23    DAN CHOVAN'S MOTHER.  I'M NOT ONE TO PLEAD AND BEG, BUT I DO

24    ASK THAT YOU READ THIS AND MAYBE USE IT IN YOUR DECISION

25    MAKING.  DAN'S DAD, WILLARD PUGH, HAS BEEN DIAGNOSED WITH A

1    VERY AGGRESSIVE FORM OF PROSTATE CANCER.  WE DON'T KNOW IF IT

2    HAS SPREAD YET, BUT WE WILL SOON FIND OUT.  HE IS SCHEDULED

3    TO BE OPERATED ON TO HAVE HIS PROSTATE REMOVED ON MARCH 30,

4    2011.  IF IT HAS SPREAD, THEY WILL DO NO FURTHER SURGERY AT

5    THIS TIME, BUT WILL START HIM ON CHEMO, OR RADIATION OR BOTH.

6         I'M 56 YEARS OLD AND NOT SO YOUNG ANYMORE.  I HAVE

7    MY AILING AND BLIND MOTHER LIVING WITH US AND IS TOTALLY

8    DEPENDENT ON ME FOR EVERYTHING.  IT SEEMS I HAVE A REALLY

9    HEAVY PLATE TO DEAL WITH.  WHILE THAT IS NOT YOUR PROBLEM,

10   I'D ASK FOR YOU TO UNDERSTAND HOW I DEPEND ON DAN TO HELP ME

11   BOTH PHYSICALLY AND MENTALLY.  I TRULY DON'T KNOW HOW I'LL DO

12   EVERYTHING I NEED TO DO WITH MY HUSBAND HAVING CANCER AND MY

13   BLIND MOM WITHOUT DAN.  I REALLY NEED HIM HERE TO HELP ME OUT

14   OR I DON'T KNOW WHAT WILL HAPPEN.

15        IF THIS SOUNDS A BIT WHINEY, WELL, I GUESS IT IS.

16   AND I DON'T KNOW HOW ELSE TO ASK YOU TO CONSIDER THIS IN YOUR

17   DECISION RE DAN'S SENTENCING.  NOT ONLY DO I LOVE HIM DEARLY,

18   BUT I NEED HIM VERY BADLY AT THIS TIME.  THANK YOU FOR TAKING

19   THIS INTO CONSIDERATION."

20        SO, EVENTS IN MR. CHOVAN'S LIFE, I THINK, HAVE

21   GIVEN HIM A NEW PERSPECTIVE.  AND NORMALLY THIS IS NOT THE

22   MOST SERIOUS CHARGE THAT THE COURT COMES ACROSS SINCE THERE

23   IS NO INDICATION THAT HE WAS DOING ANYTHING ELICIT WITH ANY

24   OF THE FIREARMS, BUT I DO THINK GIVEN THE CIRCUMSTANCES THAT

25   THERE WAS A NEED FOR MR. CHOVAN TO REASSESS THE DIRECTION

1   THAT HIS LIFE WAS GOING, AND I THINK HE HAS DONE THAT IN THIS

2   CASE.

3               OUR RECOMMENDATION IN THIS CASE IS FOR FIVE YEARS

4   OF PROBATION.  I THINK THAT WOULD BE AN APPROPRIATE SENTENCE.

5   I THINK THAT WOULD MEET ALL THE PURPOSES OF SENTENCING UNDER

6   3553, AND I THINK THE EXTENDED PERIOD OF SUPERVISION WOULD

7   REALLY BENEFIT MR. CHOVAN.  I THINK WHEN WE TAKE INTO ACCOUNT

8   THE AGE OF THE PRIOR CONVICTION IN THIS CASE, THE FACT IT WAS

9   15 YEARS OLD, AND THE STEPS HE HAS MADE SINCE HE HAS BEEN ON

10  PRETRIAL RELEASE, THE COURT CAN REST ASSURED, WITH ADEQUATE

11  SUPERVISION, AND ALSO HE DID SPEND A LITTLE BIT OVER A WEEK

12  IN CUSTODY PREVIOUSLY WHEN HE WAS ARRESTED AND I THINK THAT

13  HAD A SIGNIFICANT AFFECT SINCE HE HAS NEVER SPENT A

14  SIGNIFICANT PERIOD OF TIME IN CUSTODY SINCE THE 120 DAYS ON

15  THE MISDEMEANOR, I THINK THAT FIVE YEARS OF PROBATION IN THIS

16  CASE WOULD BE AN APPROPRIATE SENTENCE.  AND WE WILL SUBMIT ON

17  THAT.

18               THE COURT:  MA'AM?

19               MS. HAN:  YOUR HONOR, I THINK THE FUNDAMENTAL

20  DIFFERENCES BETWEEN THE UNITED STATES' PERSPECTIVE ON THIS

21  CASE AND THE DEFENDANT'S PERSPECTIVE ON THIS CASE IS THAT

22  OVER AND OVER AGAIN WE HAVE HEARD THAT THE OFFENSE IS NOT

23  THAT SERIOUS.  AND IT'S ACTUALLY NOT TRUE.  THERE IS A REASON

24  THAT FOR DOMESTIC VIOLENCE (INAUDIBLE) SPECIFICALLY, IT IS AN

25  OFFENSE TO POSSESS A FIREARM, AND IT IS BECAUSE OF THE NATURE

1    OF THE VIOLENCE OF A DOMESTIC VIOLENCE CONVICTION.  THE

2    DEFENDANT HAS THAT CONVICTION FROM AGREEABLY 15 YEARS AGO.

3    HOWEVER, AS IS DETAILED IN THE PRE-SENTENCE REPORT, HIS

4    ULTIMATE EXECUTION OF THE SEARCH WARRANT AT HIS HOUSE CAME

5    FROM ANOTHER DOMESTIC VIOLENCE RELATED INCIDENT IN MARCH OF

6    2010.

7         SO, WHILE THE CONVICTION GOES BACK 15 YEARS, THERE

8    ARE RELATIVELY RECENT ALLEGATIONS RELATED TO VIOLENCE IN HIS

9    LIFE.  WE DO NOT HAVE ANY EVIDENCE THAT HE USED THE GUNS IN

10   THOSE PARTICULAR INSTANCES.  BUT THERE'S A REASON THAT THIS

11   PARTICULAR OFFENSE EXISTS.  AND THAT IS BECAUSE OF THE NATURE

12   OF THE VIOLENCE THAT IS RELATED TO DOMESTIC VIOLENCE

13   CONVICTIONS.

14        AND MOVING ON IN TERMS OF HIS ATTEMPT TO PURCHASE

15   OR POSSESS A FIREARM.  YOUR HONOR, IN HIS PAPERS, IT APPEARS

16   THE DEFENDANT SEEMS TO BE SAYING THAT THAT LETTER FROM THE

17   STATE OF CALIFORNIA WAS UNCLEAR AS TO WHETHER OR NOT HE COULD

18   POSSESS OR PURCHASE FIREARMS.  IT'S ACTUALLY VERY CLEAR.  THE

19   LETTER SAYS WE RUN RECORD CHECKS TO DETERMINE WHETHER OR NOT

20   PEOPLE CAN POSSESS OR PURCHASE FIREARMS.  YOUR APPLICATION IS

21   DENIED.  THIS IS THE REASON IT'S DENIED, YOUR DOMESTIC

22   VIOLENCE CONVICTION FROM 1996.  THAT LETTER WENT OUT TO HIM

23   IN OCTOBER 2009.  AND SIX MONTHS LATER WHEN THE SEARCH

24   WARRANT IS EXECUTED AT HIS HOUSE THOSE GUNS ARE STILL THERE.

25        I UNDERSTAND THAT HIS POSITION IS THAT HE RECEIVED

1    THOSE GUNS FROM HIS FAMILY MEMBERS, BUT THEY WEREN'T JUST

2    GUNS THAT HE HAD IN HIS HOME.  THE VIDEO SHOWED THAT HE

3    ACTUALLY USED THE GUNS, AND THEY MAY HAVE BEEN FOR TARGET

4    PRACTICE OR SOME OTHER REASON, BUT THE VIDEO SHOWED AS WELL

5    THE CONTEXT BEHIND THAT TARGET PRACTICE IS NOT EXACTLY

6    COMPLETELY PLAIN AND WITHOUT SOME CONTROVERSY.  SO, FOR THOSE

7    REASONS I THINK THAT HIS ATTEMPT TO MINIMIZE THIS CONVICTION

8    AND THE OFFENSE ITSELF IS SOMETHING THAT THE COURT NEEDS TO

9    ADDRESS.

10           ADMITTEDLY HE HAS MADE A LOT OF CHANGES OVER THE

11   COURSE OF TIME WHILE HE HAS BEEN OUT ON PRETRIAL RELEASE.

12   BUT HE ALSO HAD SOME NEGATIVE INTERACTIONS AND THAT'S ALL

13   THAT THE GOVERNMENT IS TRYING TO POINT OUT.  BECAUSE AGAIN,

14   HE HAS ATTEMPTED TO MINIMIZE, AND SORT OF IN HIS MOTION FOR

15   BAIL PENDING APPEAL, SORT OF TRIED TO DEMONSTRATE THAT HE IS

16   A MODEL GUY ON PRETRIAL RELEASE, WHICH IS REALLY NOT THE CASE

17   AT ALL.  AND SO, BEFORE YOU CAN MOVE ON, BEFORE YOU CAN GET

18   PAST THIS PART OF YOUR LIFE, YOU ALSO NEED TO BE HELD

19   ACCOUNTABLE.  IT'S FOR THAT REASON WE ARE RECOMMENDING 12

20   MONTHS IN CUSTODY.

21           YOUR HONOR, I THINK IT'S ALSO RELATED TO HE TALKED

22   A LITTLE BIT ABOUT HIS LINKS TO NSM.  AND REPORTEDLY AFTER

23   THE DEFENDANT'S ARREST, THESE BORDER PATROLS THAT HAD BEEN

24   EXISTING, SOME OF WHICH MAY BE DETAILED IN THE VIDEO THAT WE

25   SUBMITTED TO THE COURT, THOSE STOPPED.  AND SO, AS JUST A

1   LESSON, A MESSAGE TO THE COMMUNITY, A FACTOR THAT CAN BE

2   TAKEN INTO CONSIDERATION UNDER 3553(A) AS WELL, IT WOULD NOT

3   SEND THE RIGHT MESSAGE TO HAVE SOMEONE ARRESTED FOR A VERY

4   SERIOUS OFFENSE AND THEN ESSENTIALLY LET THEM GO FREE WITH

5   FIVE YEARS PROBATION.

6            SO, JUST TO STRESS THE POINT AGAIN, HE CANNOT MOVE

7   PAST ALL OF THIS NEGATIVE STUFF IN HIS LIFE, AND ADMITTEDLY

8   THERE ARE A LOT OF PERSONAL PROBLEMS HE IS ALSO FACING, HE

9   CANNOT MOVE PAST THAT UNTIL HE IS HELD ACCOUNTABLE AND

10  ACCEPTS RESPONSIBILITY, WHICH SEEMS HE IS HAVING SOME

11  DIFFICULTY DOING.  OUR RECOMMENDATION IS 12 MONTHS CUSTODY.

12           THE COURT:  ALL RIGHT.  THANK YOU.  MR. CRAWFORD,

13  ANYTHING FROM YOUR OFFICE?

14           PROBATION OFFICER:  WE HAVE NOTHING FURTHER, YOUR

15  HONOR.

16           THE COURT:  SIR, WHAT DO YOU HAVE TO SAY BEFORE

17  SENTENCING?

18           THE DEFENDANT:  I DO APOLOGIZE FOR ANY

19  INCONVENIENCE, AND I DO TAKE RESPONSIBILITY FOR MY ACTIONS.

20  ALL THAT NSM STUFF HAD STOPPED WAY PREVIOUS TO THAT.

21           AND UM, YOU KNOW, UM THAT SHOPLIFTING THING, I

22  WASN'T FOUND WITH ANYTHING ON ME, AND I HAD NO IDEA ANYBODY

23  WAS DOING ANYTHING.  IF I HAD BEEN SHOPLIFTING, THEY WOULD

24  HAVE ARRESTED ME THEY TOLD ME.

25           YOU KNOW, I WOULD JUST LIKE YOU TO CONSIDER

1    PROBATION AND LET ME HAVE ENOUGH ROPE TO HANG MYSELF, IF I'M

2    SUCH A BAD GUY AS THE PROSECUTION SAYS.  I CAN GUARANTEE YOU,

3    YOU WON'T SEE ME AGAIN.

4           AND, YOU KNOW, ALL THESE ACCUSATIONS AND STUFF CAME

5    OUT FROM A SPLIT UP FROM MY WIFE AT THE TIME, YOU KNOW, WHO

6    WAS TRYING TO GET BACK AT ME FOR A GIRLFRIEND.

7           THE COURT:  TELL ME ABOUT IT.

8           THE DEFENDANT:  YOU WANT ME TO TELL YOU ABOUT IT?

9           THE COURT:  YEAH.

10          THE DEFENDANT:  I HAD MET A GIRL -- I HAD A MET A

11   GIRL THAT I HAD KNOWN BEFORE.  I RE-MET HER, SORT OF.  AND WE

12   KIND OF HIT IT OFF.  AND I WASN'T HAPPY IN THE PREVIOUS

13   RELATIONSHIP AT ALL.  AND SO, MY WIFE AT THE TIME THOUGHT IT

14   WAS OKAY AS LONG AS MY GIRLFRIEND WAS GOING TO BE GOING AWAY.

15   WHEN SHE FIGURED OUT THAT MY GIRLFRIEND WAS GOING TO BE

16   STICKING AROUND AND I ASKED HER FOR A DIVORCE, THEN SHE

17   STARTED CALLING EVERYBODY UNDER THE SUN, YOU KNOW, EVEN TRIED

18   CALLING AGED SERVICES OR SOMETHING SAYING I WAS NEGLECTING

19   HER.  SHE CALLED EVERYBODY BUT THE BOY SCOUTS TRYING TO GET

20   ME IN TROUBLE.

21          AND LIKE I SAID, I DO APOLOGIZE FOR ANY

22   INCONVENIENCE HERE.  AND YOU WON'T SEE ME AGAIN UNLESS YOU

23   ACTUALLY ASK TO SEE ME.  YOU WON'T SEE ME AGAIN.  I CAN DO

24   PROBATION.  IT WOULD HELP ME CONTINUE WITH MY JOB, AND HELP

25   ME CONTINUE WITH MY, YOU KNOW, WEEKLY DOCTORS APPOINTMENTS,

1  AND, YOU KNOW, I CAN STAY AWAY FROM EVERYTHING I'M NOT

2  SUPPOSED TO DO.  THANK YOU.

3          THE COURT:  ANYTHING ELSE, COUNSEL?

4          MS. HAN:  YOUR HONOR, CAN I JUST RESPOND BRIEFLY TO

5  HIS DESCRIPTION OF HIS RELATIONSHIP WITH HIS SIGNIFICANT

6  OTHER, I GUESS, NOW WIFE.  MY ONLY POINT I WANTED TO MAKE IS

7  TO HIGHLIGHT THE POINT WE MADE IN OUR PAPERS THAT -- I DON'T

8  KNOW IF WE GAVE ADDITIONAL INFORMATION, BUT I THINK THE

9  RELATED ISSUE TO AGE ISSUES IS I THINK THAT PARTICULAR PERSON

10 HAS SIGNIFICANT MEDICAL ISSUES, SO I THINK THAT IS WHAT THAT

11 IS ABOUT.

12         THE COURT:  WHAT PERSON, EXCUSE ME?

13         MS. HAN:  HIS WIFE, CHERYL CHOVAN, HAS SIGNIFICANT

14 MEDICAL ISSUES, SO I THINK THAT IS WHAT HE IS SPEAKING OF

15 THAT SEEMS TO BE A LITTLE OUT OF CONTEXT.  SO, I JUST WANTED

16 TO CLARIFY THAT FOR THE COURT.

17         IN RELATION TO HIS ARREST, SHE DID RELOCATE

18 OUT-OF-STATE IN RELATION TO HIS ARREST, AFTER HIS ARREST.

19         MR. JONES:  YOUR HONOR, JUST TO CLARIFY, WE DID

20 MENTION THIS IN OUR PAPERS, SO THE COURT HAS A WHOLE PICTURE.

21 MR. CHOVAN HAS INDICATED, BOTH HIS PARENTS HAVE INDICATED TO

22 ME, BASED ON THEIR CONTACT WITH MS. CHOVAN, SHE DOES HAVE

23 VERY SIGNIFICANT MENTAL HEALTH ISSUES, AS WELL AS SUBSTANCE

24 ABUSE ISSUES AND I'M SURE MEDICAL ISSUES AS WELL.

25         REGARDLESS OF THE DETAILS OF HOW WE WORK IT OUT,

1   THAT IT WAS A BAD SITUATION BETWEEN THE TWO OF THEM, AND, YOU

2   KNOW, IT'S UNLIKELY WE WILL BE ABLE TO SORT OUT ALL OF THE

3   DETAILS OF EXACTLY WHAT HAPPENED THERE.  WE DO CONTEST THAT

4   MR. CHOVAN HAD ANYTHING TO DO WITH RUNNING HER OUT.  IN FACT,

5   I THINK THE FACTS INDICATE THAT HIS PARENTS AND HIS

6   GIRLFRIEND CAN SUPPORT THAT HE WAS ATTEMPTING TO LEAVE.  THAT

7   WAS THE SOURCE OF THE WHOLE PROBLEM HE WAS TRYING TO LEAVE

8   THE RELATIONSHIP AND SHE DIDN'T WANT THAT TO HAPPEN.  I DON'T

9   WANT TO BURDEN THE COURT WITH TRYING TO COME UP WITH ALL THE

10  DETAILS.  HE ACKNOWLEDGES THEY CALLED THE POLICE WITH REGARD

11  TO THE DOMESTIC VIOLENCE ISSUE, AND I DON'T THINK HE IS

12  TRYING TO MINIMIZE THE OFFENSE.  BUT I DON'T THINK HE'S THE

13  PERSON THAT THE COURT NEEDS TO FEEL THE NEED TO SEND A

14  MESSAGE TO ANYBODY WITH.  BECAUSE HE'S BEEN -- IT'S EXTREMELY

15  RARE, I THINK, TO HAVE A PERSON WITH A CONVICTION THIS OLD

16  THAT'S GOING TO BE CHARGED WITH THAT.  I THINK THAT'S A FAIR

17  POINT FOR US TO MAKE WITHOUT MR. CHOVAN BEING ACCUSED THAT HE

18  IS NOT TAKING IT SERIOUSLY.  I THINK HE HAS SHOWN BY HIS

19  ATTEMPTS TO GET BETTER WORK, HIS ATTEMPTS TO COMPLY WITH HIS

20  MENTAL HEALTH CONDITIONS AND TO GET HIS LIFE BACK IN ORDER,

21  HE IS TAKING THIS SERIOUSLY AND HIS COMMENTS TODAY FURTHER

22  SHOW THAT.

23          THE COURT:  ALL RIGHT, THANK YOU.  ALL RIGHT, SIR,

24  YOUR SENTENCE SHALL BE BASED UPON THE FOLLOWING:  I WILL LOOK

25  TO THE GUIDELINES FIRST.  UNDER THE GUIDELINES, YOUR BASE

1    OFFENSE LEVEL IS 14.  THERE IS A TWO-LEVEL INCREASE FOR THE

2    NUMBER OF FIREARMS INVOLVED IN THIS CASE, FOR AN ADJUSTED

3    OFFENSE LEVEL OF 16.  THE COURT GRANTS THE GOVERNMENT'S

4    MOTION FOR A MINUS THREE ADJUSTMENT FOR ACCEPTANCE OF

5    RESPONSIBILITY FOR A TOTAL OFFENSE LEVEL OF 13.  YOUR

6    CRIMINAL HISTORY SCORE IS ZERO.  YOUR CRIMINAL HISTORY

7    CATEGORY IS ONE.  AND UNDER THE GUIDELINES, YOUR SENTENCE

8    SHOULD RANGE BETWEEN 12 AND 18 MONTHS IN CUSTODY.

9          I LOOK TO THE FACTORS PROVIDED BY LAW WHICH PERMIT

10   ME TO DETERMINE AN APPROPRIATE SENTENCE IN THIS CASE.  I LOOK

11   TO YOUR PRIOR CRIMINAL HISTORY.  I LOOK TO YOUR PERSONAL

12   HISTORY AND CHARACTERISTICS.  I'M MINDFUL -- I'VE READ

13   EVERYTHING PRESENTED TO ME.  I'M MINDFUL OF THE DETAILS OF

14   YOUR SENTENCING MEMORANDUM, AS WELL AS THOSE OF THE

15   GOVERNMENT.  I'M MINDFUL OF THE NATURE OF THIS CHARGE.  IT

16   HAS A UNIQUE PLACE HERE IN THAT IT INVOLVES VIOLENCE.  BUT

17   I'M ALSO MINDFUL THAT YOUR CONVICTION IS APPROXIMATELY 15

18   YEARS OLD, YOUR MISDEMEANOR DOMESTIC VIOLENCE CONVICTION.

19   AND I HAVE IN MIND THE CIRCUMSTANCES THAT HAVE OCCURRED SINCE

20   AT THE SALVATION ARMY LAST SPRING.

21         WHEN I LOOK TO ALL THESE FACTORS, I HAVE READ

22   EVERYTHING, AND I'VE CONSIDERED ALL OF THIS, THE COURT IS OF

23   THE MIND IT CAN FASHION A SENTENCE THAT IS SUFFICIENT BUT NOT

24   GREATER THAN NECESSARY TO ADDRESS THIS MISCONDUCT.  THE COURT

25   SENTENCES YOU TO FIVE YEARS OF PROBATION.  THERE SHALL BE NO

1    FINE.  YOU SHALL PAY THE $100 SPECIAL ASSESSMENT.  AND YOU

2    ARE -- THE PROBATION SHALL CONSIST OF THE STANDARD TERMS OF

3    PROBATION INCLUDING THE SPECIAL CONDITIONS.

4              THAT YOU ARE PLACED ON HOUSE ARREST FOR A PERIOD OF

5    12 MONTHS.  HOUSE ARREST.  AND DURING THAT PERIOD YOU ARE

6    ALLOWED TO LEAVE YOUR HOME FOR NO REASON OTHER THAN RELIGIOUS

7    ACTIVITIES, MEDICAL ACTIVITIES FOR YOURSELF.  I WILL INCLUDE

8    YOUR FATHER -- YOUR STEPFATHER IN THAT REGARD.

9              THE DEFENDANT:  WORK?

10             THE COURT:  EMPLOYMENT, AND THAT'S IT.  YOU CAN'T

11   GO TO WALMART.  YOU CAN'T GO TO SEARS.  YOU CAN'T GO TO TJ

12   MAX.  YOU CAN'T GO SHOPPING FOR GROCERIES, ALL RIGHT, WITHOUT

13   THE PERMISSION -- ANY OTHER TIME YOU ARE OUT OF THE HOME IT

14   HAS TO BE WITH THE PERMISSION OF YOUR PROBATION OFFICER.

15             THE DEFENDANT:  YES, SIR.

16             THE COURT:  YOU ARE SUBJECT TO ELECTRONIC

17   MONITORING.  I WILL LEAVE THE MONITORING TECHNIQUE TO THE

18   PROBATION OFFICE.  IT COULD BE GPS MONITORING WITH AN ANKLE

19   BRACE, FROM AN ACTIVE SYSTEM -- WHERE DO YOU LIVE, SIR,

20   REFRESH ME.

21             THE DEFENDANT:  JAMUL.  IT'S OUT BY DULZURA/TECATE

22   AREA.

23             THE COURT:  IN LIGHT OF THE CONVICTION, THE COURT

24   WILL DIRECT THAT THE MONITORING BE GPS ACTIVE.  AND THE

25   PROBATION OFFICER MAY BROACH ME TO MODIFY THAT AS TIME GOES

1   ON, IF THE PROBATION OFFICER DETERMINES THAT IT'S

2   APPROPRIATE.  THAT MEANS THE PROBATION OFFICER WILL KNOW

3   WHERE YOU ARE WITHIN 15 METERS, AT ANY TIME OF THE DAY, WITH

4   THE ANKLE BRACE AND GPS SYSTEM.  IF YOU ARE NOT WHERE YOU ARE

5   SUPPOSED TO BE, YOU ARE BACK HERE AND WE HAVE OTHER OPTIONS.

6   DO YOU UNDERSTAND THAT?

7          THE DEFENDANT:  YES, SIR.

8          THE COURT:  YOU MUST HAVE A PHONE LINE THAT'S

9   COMPATIBLE WITH GPS MONITORING.  AND YOU ARE TO PAY THE COST

10  OF ANY TAMPERING WITH THAT -- OR ANY DESTRUCTION OF THAT GPS

11  EQUIPMENT.  AND YOU SHALL PAY THE COST OF MONITORING.  IF

12  IT'S GPS, IT'S $10 A DAY, SIR?  IF IT'S ACTIVE GPS?

13         PROBATION OFFICER:  YES, YOUR HONOR.

14         THE COURT:  ALL RIGHT.  AGAIN, I WOULD LIKE FOR IT

15  TO START WITH AN ACTIVE MONITORING SYSTEM, AND THEN I WILL

16  LEAVE IT UP TO THE PROBATION OFFICER AS TO HOW TO DEAL WITH

17  THAT LATER.

18         IN ADDITION, YOU'RE NOT TO ASSOCIATE WITH OR HAVE

19  ANY PARTICIPATION WITH THE BORDER PATROL GROUP.

20         YOU'RE NOT TO ENTER OR RESIDE IN THE REPUBLIC OF

21  MEXICO WITHOUT THE PERMISSION OF YOUR PROBATION OFFICER.

22         YOU ARE TO PARTICIPATE IN A PROGRAM OF MENTAL

23  HEALTH TREATMENT AS DIRECTED BY THE PROBATION OFFICER.

24         TAKE ALL MEDICATIONS PRESCRIBED BY A PHYSICIAN OR

25  PSYCHIATRIST.  AND YOU ARE NOT TO DISCONTINUE ANY MEDICATION

```
1    WITHOUT THE PERMISSION OF YOUR HEALTH CARE PROVIDER.
2    THE PROBATION OFFICER MAY PROVIDE INFORMATION AT HIS DISPOSAL
3    TO THE HEALTH CARE PROVIDER.
4              AND SIR, THE COURT DIRECTS THAT IF YOU HAVE ANY
5    HEALTH CARE INFORMATION, THAT WOULD BE HELPFUL TO GIVE TO THE
6    HEALTH CARE PROVIDER THAT YOU PROVIDE THAT AS WELL.  DO YOU
7    UNDERSTAND THAT?
8              THE DEFENDANT:  YES, SIR.
9              THE COURT:  YOU MAY BE REQUIRED TO CONTRIBUTE TO
10   THE COST OF THIS TREATMENT BASED UPON YOUR ABILITY TO PAY
11   DETERMINED BY THE PROBATION OFFICER.
12             YOU ARE TO PARTICIPATE IN A PROGRAM OF DRUG OR
13   ALCOHOL ABUSE TREATMENT, INCLUDING URINALYSIS TESTING AND
14   COUNSELING AS DIRECTED BY THE PROBATION OFFICER.  AND YOU MAY
15   BE REQUIRED TO CONTRIBUTE TO THE COST OF THAT TREATMENT BASED
16   UPON YOUR ABILITY TO PAY AS DETERMINED BY THE PROBATION
17   OFFICER AS WELL.
18             MR. CRAWFORD, ANY OTHER CONDITIONS COME TO MIND?
19             PROBATION OFFICER:  I'M SORRY, FOR HOW LONG DID YOU
20   SAY FOR HOME DETENTION?
21             THE COURT:  12 MONTHS.
22             MS. HAN:  CAN WE ASK A POINT OF CLARIFICATION?
23   WHEN YOU SAID ASSOCIATION WITH MEMBERS OF THE BORDER PATROL,
24   DO YOU MEAN THE NSM GROUP CONDUCTING AS BORDER PATROL?
25             THE COURT:  THE NSM GROUP CONDUCTING AS BORDER
```

1    PATROL.  YES, THE NSM GROUP.  THANK YOU VERY MUCH.

2              MS. HAN:  AND YOUR HONOR, THE GOVERNMENT IS MOVING

3    TO DISMISS THE REMAINING COUNTS.  WE ARE ASKING YOU TO ENTER

4    THE FORFEITURE ORDER AND INCLUDE THAT IN THE JUDGMENT AND

5    CONVICTION AS WELL.

6              THE COURT:  ONE SECOND.  THE COURT IS OF THE MIND

7    THOSE CONDITIONS -- THE SENTENCE, INCLUDING THOSE CONDITIONS,

8    ARE SUFFICIENT TO ADDRESS THE MISCONDUCT HERE, IN LIGHT OF

9    THE AGE OF THE PRIOR, AND ALL THE OTHER CIRCUMSTANCES WE HAVE

10   DISCUSSED HERE.  DO YOU UNDERSTAND THERE IS A RIGHT TO

11   APPEAL?

12             MS. HAN:  YOUR HONOR, ON THE VERY SPECIFIC

13   CONSTITUTIONAL ISSUES, YES.

14             THE COURT:  RIGHT.  YOU UNDERSTAND YOU RESERVE THE

15   RIGHT TO APPEAL ON THE SECOND AMENDMENT ISSUE, DO YOU

16   UNDERSTAND THAT?

17             THE DEFENDANT:  YES, I DO.

18             THE COURT:  YOU HAVE TEN DAYS FROM TODAY TO FILE

19   THAT APPEAL.  MR. CRAWFORD.

20             PROBATION OFFICER:  YOUR HONOR, YOU MAY HAVE

21   ALREADY SAID IT, BUT SUBMIT TO A SEARCH CONDITION.

22             THE COURT:  AN ADDITIONAL CONDITION, SPECIAL

23   CONDITION OF SUPERVISED RELEASE IS THAT YOU SUBMIT TO A

24   SEARCH OF YOUR PERSON, PROPERTY, RESIDENCE, OR VEHICLE AT A

25   REASONABLE TIME AND IN A REASONABLE MANNER AS DIRECTED BY THE

1  PROBATION OFFICER, BASED UPON AN ARTICULABLE SUSPICION THAT

2  YOU ARE IN POSSESSION OF CONTRABAND OR WEAPONS.  DO YOU

3  UNDERSTAND THAT, SIR?

4         THE DEFENDANT:  YES.

5         THE COURT:  FAILURE TO SUBMIT TO SUCH A SEARCH

6  WOULD BE A VIOLATION OF SUCH CONDITION.  I WOULD ADVISE WITH

7  WHOM YOU LIVE THAT YOU ARE SUBJECT TO SUCH A SEARCH.

8         THE LAST CONDITION THAT COMES TO MIND, YOU'RE NOT

9  TO POSSESS ANY WEAPONS.  IF YOU HAVE WEAPONS IN THE HOME, GET

10  RID OF THEM.

11         THE DEFENDANT:  YES, SIR.

12         THE COURT:  YOU'RE NOT TO BE IN THE POSSESSION OF

13  ANY WEAPONS DURING SUPERVISED RELEASE.  DO YOU UNDERSTAND

14  THAT?

15         THE DEFENDANT:  YES, I DO.

16         THE COURT:  SIR, WOULD YOU COME FORWARD TO OBTAIN

17  THE CONDITIONS.

18         THE DEFENDANT:  WHAT?

19         THE COURT:  I'M TALKING TO COUNSEL.  THE RECORD

20  SHALL REFLECT THE DEFENDANT HAS HIS CONDITIONS.

21         MR. JONES:  YOUR HONOR, BASED ON THE SENTENCE THE

22  COURT IMPOSED, WE WITHDRAW OUR MOTION FOR BOND PENDING

23  APPEAL.

24         THE COURT:  WITHDRAWN.  BOND IS --

25         MR. JONES:  EXONERATED?

1        THE COURT:  -- EXONERATED.  THANK YOU.  YOUR BOND

2    IS EXONERATED, SIR.  YOU ARE TO REPORT TO THE PROBATION

3    OFFICER ACROSS THE STREET BEFORE YOU LEAVE THE AREA.

4        THE DEFENDANT:  YES, SIR.

5        THE COURT:  ANYTHING ELSE, COUNSEL?

6        ALL COUNSEL:  NO, YOUR HONOR.  THANK YOU.

7        THE DEFENDANT:  THANK YOU, YOUR HONOR.

8            (WHICH WERE ALL THE PROCEEDINGS

9            HELD IN THE ABOVE-ENTITLED CAUSE.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

COUNTY OF SAN DIEGO        )

                          )  SS.

STATE OF CALIFORNIA        )


I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

STENOGRAPHIC NOTES.



DATE:  4-11-11


**S:/MELISSA A. PIERSON**

MELISSA A. PIERSON, CSR 12499 RPR

FEDERAL OFFICIAL COURT REPORTER